STATE OF CONNECTICUT *v.* WILLIAM JOHN GRADY

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued June 3—decided June 28, 1965

*George Gilman,* public defender, with whom, on the brief, was *Wayne G. Tillinghast,* for the appellant (defendant).

*Edmund W. O'Brien,* state's attorney, with whom, on the brief, was *Joseph T. Sweeney,* special assistant state's attorney, for the appellee (state).

KING, C. J.   The defendant, at the time of the institution of this prosecution, was serving a prison sentence imposed upon his conviction of crimes com-

mitted in Hartford County. Apparently under General Statutes § 54-139, construed and explained in *State* v. *Springer,* 149 Conn. 244, 178 A.2d 525, he had applied for a trial of the New London County charges alleged in the first part of the information. In any event, the state was required to, and did, obtain a writ of habeas corpus ad respondendum in order to have Grady taken from the state prison and brought before the Superior Court for plea, election and trial under the New London County information. This was done, the trial took place, and Grady was convicted and sentenced.

At some time, not precisely disclosed in the record but apparently after conviction under the first part of the information, Grady, through counsel, first raised the claim that on the bench warrant calling for his arrest the officer's return did not show that he had in fact been arrested. Whether he had actually been arrested, so that the irregularity was in the return only, does not appear from the record. He was, however, fully informed in the information of the charges against him. Indeed, the information was made more specific, apparently at his request. He was already in custodia legis as a convict in the state prison. He was brought into the court under the writ of habeas corpus ad respondendum and thus remained in custodia legis. He was not free to go at large, whether he was, or was not, arrested under the bench warrant. He was represented throughout by competent counsel, and no prejudice of any kind could have, or is shown to have, resulted to him, whether he was or was not actually arrested under the bench warrant. If the error was in the officer's return only, Grady cannot now derive any advantage from such a wholly technical procedural defect. If in fact he had not been arrested, and this claim he

does not clearly make, he certainly knew of the omission prior to his plea, and his failure to make any claim concerning it at that time would be, under the circumstances, a waiver of a purely technical irregularity. *State* v. *Wolcott*, 21 Conn. 272, 280; *State* v. *DeGennaro*, 147 Conn. 296, 304, 160 A.2d 480. This claim of error is without merit.

A second basic claim of error arises from the fact that Grady was convicted under an information in two parts. The first part embraced several counts of breaking and entering and related crimes. The second part charged him with being an "habitual criminal" under § 54-121 of the General Statutes, the material portion of which is quoted in the footnote.[1] The procedure to be followed in such a two-part information is given in Practice Book § 487, also quoted in the footnote.[2] See also *State* v. *Kohlfuss*, 152 Conn. 625, 632, 211 A.2d 143.

---

[1] "Sec. 54-121. INDETERMINATE SENTENCE. . . . [W]hen any person . . . [sentenced to the state prison] has twice before been convicted, sentenced and imprisoned in a state prison . . . , the court shall sentence such person to a maximum of thirty years . . . ."

[2] "[Practice Book] Sec. 487. FORMER CONVICTION; SEPARATE PLEAS Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecutor. In the first part the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. The plea and election of method of trial by the accused shall be first taken only on the first part of the information, but before he is put to plea thereon he shall be informed by the clerk, in the absence of the court, of the contents of the second part. The clerk shall enter on the docket the time and place of giving such information and include entry thereof in the judgment file. On a finding of guilty on the first part of the information, plea shall be taken and, if necessary, election made on the second part and trial thereon proceeded with. If the accused shall have elected a jury trial on the second part of the information, such trial may be had to the same or another jury as the court may direct."

Grady, having elected a trial to the jury on the first part of the information, chose to, and did, take the stand in his own behalf. During the course of his cross-examination he was asked whether he was the William John Grady who was convicted of the crime of grand theft in California in June, 1951. Grady refused to answer on the ground that his answer might incriminate him. His counsel then informed the court that Grady's conviction in California would be a controverted issue in any proceedings under the second part of the information and that for this reason his claim of privilege against self-incrimination would be valid. The state claimed the question on the ground that the conviction was admissible under § 52-145 of the General Statutes to affect Grady's credibility as a witness. This appears to have been the only ground on which the question could have been admissible under the first part of the information. *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649. The court then stated that the admissibility of the evidence under the second part of the information was "not before us at the present time" and ordered Grady to answer the question, which he did, admitting the California conviction.

The question was properly asked of Grady in his capacity as a witness, aside from any question of privilege against compulsory self-incrimination. *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 469, 208 A.2d 341 (quoting the relevant portion of General Statutes § 52-145); 8 Wigmore, Evidence § 2277, p. 475 (McNaughton Rev. 1961). But Grady's right to refuse to answer such a question on the ground that it violated his constitutional privilege against compulsory self-incrimination, under the facts of this case, is quite another matter.

8 Wigmore, op. cit. § 2277, p. 477. The privilege, although first raised in the trial of the first part of the information, was based on the use of the answer under the second part. Consequently, we need consider the claim of privilege only in connection with the trial under the second part. It should not be overlooked, however, that the claim of privilege was raised in clear and timely manner, and that the court was alerted both to the claim and to the problem presented, well in advance of the trial under the second part. Clearly, Grady did not answer the question voluntarily as an unrestricted admission.

Subsequently, after adjudication of guilt under the first part of the information, Grady was put to plea under the second part of the information, which charged him with being an "habitual criminal" under General Statutes § 54-121. In the second part of the information, the state, as required by Practice Book § 487, had alleged the essential elements of guilt under the "habitual criminal" statute, including Grady's imprisonment in the California state prison under a sentence of not less than one nor more than ten years upon his conviction in 1951 of the crime of grand theft and his imprisonment in the Connecticut state prison under a sentence of not less than three nor more than eleven years upon his conviction in 1955 of several counts of breaking and entering.

Grady pleaded not guilty to the second part of the information and elected a trial by jury. This trial actually took place before a new jury. Grady, as was his right, chose not to take the stand in the trial under the second part. In order to prove the California conviction and imprisonment, a certified copy of the California judgment of conviction was

offered by the state and admitted without objection. Thereafter, the official court stenographer who had served at the trial under the first part of the information, over the objection and exception of counsel that Grady's constitutional privilege against compulsory self-incrimination was being violated, was allowed to read the portion of the testimony given by Grady on cross-examination in the trial under the first part of the information in which he had answered, under the compulsion of the court order, that he was the Grady convicted and imprisoned in California for grand theft in 1951.

Cases involving methods of proving identity in order to bring a convicted person within the provisions of statutes, such as our § 54-121 (and § 54-118), providing for an enhanced punishment in case of one or more prior convictions, are collected in an annotation in 11 A.L.R.2d 870, and in 1 Later Case Service, p. 1148; see also *State* v. *Couture,* 151 Conn. 213, 218, 196 A.2d 113.

Since Grady had pleaded not guilty, proof of his identity with the Grady named in the California criminal judgment was an essential element of the state's case under the second part of the information. It is true that the second part did not charge a complete crime separate and distinct from the crimes charged in the first part of the information. Rather, proof of the allegations under the second part would affect only the punishment to be imposed under the first part. *Graham* v. *West Virginia,* 224 U.S. 616, 623, 32 S. Ct. 583, 56 L. Ed. 917; *State* v. *Cullum,* 149 Conn. 728, 176 A.2d 587.

Under our particular procedure, however, in a two-part information such as this, there are really two separate proceedings. 5 Wharton, Criminal Law and Procedure § 2221. This is clear for a num-

ber of reasons. The trial on the second part of the information is subsequent to that on the first and will take place only in the event of conviction under the first part. On the second part the defendant must, separately and anew, plead, elect trial by court or jury, and choose whether or not to take the stand as a witness. His decision as to these matters is unaffected by his decision as to the corresponding matters under the first part. *State* v. *Ferrone,* 96 Conn. 160, 175, 113 A. 452.

Under Grady's plea of not guilty to the second part of the information, the state had the burden of proving beyond a reasonable doubt the elements essential to bring him within the habitual criminal statute. *State* v. *Ferrone,* supra, 173; *People* v. *Reese,* 258 N.Y. 89, 100, 179 N.E. 305; 1 Wharton, Criminal Evidence (12th Ed.) § 18; 2 id. § 645. While the identity of the full name of the defendant with that of the person named in the prior California conviction is some evidence that each name refers to the same person, it was not adequate, alone, to constitute proof beyond a reasonable doubt that Grady was the person named in the California criminal judgment, especially since the prior conviction occurred over ten years before and in a very populous state far removed from Connecticut. See *People* v. *Reese,* supra, 96; 1 Wharton, Criminal Evidence (12th Ed.) § 100; note, 11 A.L.R.2d 870, 887 § 9, 890 § 10. Grady reiterated his claim of privilege during the trial on the second part of the information when his prior testimony, given under compulsion and admissible solely to affect his credibility as a witness, was offered against him in proof of an essential element of the state's case under the second part of the information. See cases such as *People* v. *Carrow,* 207 Cal. 366, 368, 278 P. 857;

*People* v. *Hamm,* 145 Cal. App. 2d 242, 244, 302 P.2d 345.

It is settled law that even if an accused waives his privilege against self-incrimination by voluntarily testifying, the waiver is limited to the particular proceeding in which he volunteers the testimony. 8 Wigmore, Evidence § 2276 (4), p. 470 (McNaughton Rev. 1961). Here, Grady took the stand only on the trial of the first part of the information. Thus, even if there had been a waiver in the trial under the first part, that could not have applied to the trial under the second part. See note, 153 A.L.R. 1159, 1162. For the reasons already pointed out, the proceeding under each part is wholly separate from that under the other part.

The privilege against compulsory self-incrimination under the second part of the information was not waived because Grady chose to take the stand in the trial under the first part. Under the second part he was entitled to choose, as he did, not to take the stand. He was not even subject to cross-examination, since he gave no testimony. *Caminetti* v. *United States,* 242 U.S. 470, 492, 37 S. Ct. 192, 61 L. Ed. 442; *State* v. *Fienberg,* 105 Conn. 115, 120, 121, 134 A. 228.

The use of Grady's testimony, given under compulsion, to prove an essential element of the state's case under the second part was a violation of § 9 of article first of the Connecticut constitution, which provides that an accused "shall not be compelled to give evidence against himself". *Malloy* v. *Hogan,* 150 Conn. 220, 224, 187 A.2d 744, rev'd on other grounds, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653. It was also a violation of the fifth amendment to the constitution of the United States. *Malloy* v. *Hogan,* 378 U.S. 1, 7, 84 S. Ct. 1489, 12 L. Ed. 2d 653; see also *Griffin* v. *California,* 380 U.S. 609, 615, 85 S. Ct.

1229, 14 L. Ed. 2d 106. The court was in error in admitting, in the trial under the second part of the information, Grady's admission made under compulsion in the trial under the first part.

Grady's third basic claim is that the sentence imposed constituted cruel and unusual punishment. This claim is without merit. *Graham* v. *West Virginia*, 224 U.S. 616, 631, 32 S. Ct. 583, 56 L. Ed. 917; *State* v. *McNally*, 152 Conn. 598, 603, 211 A.2d 162.

There is no error in the adjudication of guilt under the first part of the information; there is error under the second part of the information, and as to that part the judgment is set aside and a new trial is ordered; since the maximum sentence imposed under the first part of the information was made necessary because of the adjudication of guilt under the second part of the information, there must be a resentencing under the first part of the information unless the state prevails on the retrial of the second part of the information.

In this opinion the other judges concurred.