STATE OF CONNECTICUT *v.* ROBERT BENSON

STATE OF CONNECTICUT *v.* REUBEN McCRARY, JR.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued November 4—decided November 30, 1965

*Robert C. Delaney,* with whom, on the brief, was *Peter J. Zaccagnino, Jr.,* for the appellants (defendants).

*Edmund W. O'Brien,* state's atorney, and *Joseph T. Sweeney,* special assistant state's attorney, for the appellee (state).

KING, C. J.   These two defendants were tried together, and their appeals from judgments of conviction were, by stipulation, combined for presentation to this court.   Each defendant was charged, in two counts, with larceny on March 11, 1964, in violation of subsection (b) of § 53-63 of the General Statutes, which provides a special and generally more severe penalty for the larceny of "goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment".   Each was acquitted under the second count but convicted under the first count.   The defendant Reuben McCrary, Jr., was also charged in the second part of the information with being a second offender under § 54-118 of the General Statutes.   Upon a separate jury trial on the second part of the information, after conviction under the larceny charge in the first part of the information, he was found guilty of being a second offender.   No assignments of error are directed against this conviction under the second part of the information, and the procedure followed appears to have been in full conformity with proper practice, as outlined in cases such as *State* v. *Couture,* 151 Conn. 213, 217, 196 A.2d 113, and *State* v. *Grady,* 153 Conn. 26, 31, 211 A.2d 674.

Subsection (a) of § 53-63 embraces the common-law crime of larceny and provides a punishment

graduated, in four steps, according to the value of the goods stolen. Subsection (b) of that section was added by Public Acts 1959, No. 596 (amended by Public Acts 1961, No. 305) and was directed at what is commonly known as shoplifting. Its provisions include the crime of common-law larceny if the subject of the larceny consists of "goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment". Subsection (b) also provides a punishment graduated, in four steps, according to the value of the goods stolen, but in most instances the permissible punishment is more severe than that provided in subsection (a) for the larceny of ordinary personal property of corresponding value.

One basic claim of each defendant, which we first consider, is that the goods charged to have been stolen were not "goods . . . offered or exposed for sale" within the meaning of subsection (b) of the statute. This claim grows out of the fact that the goods were claimed by the state to have been stolen from a trading stamp redemption center or store maintained in New London by the Sperry and Hutchinson Company, hereinafter sometimes referred to as S & H. The court charged that a theft of goods from the S & H redemption store was, as matter of law, a theft of goods "offered or exposed for sale" within the meaning of subsection (b) of § 53-63. To this instruction each defendant excepted.

In a jury case such as this, the charge must be tested by the claims of proof in the finding. *Martyn v. Donlin,* 151 Conn. 402, 409, 198 A.2d 700. The defendants, apparently quite properly, did not in their brief pursue any attack on the finding involved in this part of the appeal, and any assignments of

error directed to this part are treated as abandoned. *State* v. *Harris,* 147 Conn. 589, 591, 164 A.2d 399; *Fleischer* v. *Kregelstein,* 150 Conn. 158, 160, 187 A.2d 241. The claims of proof of the state and the defendants material to this portion of the appeal are not in any real dispute and may be summarized rather briefly.

The Sperry and Hutchinson Company, which was the owner of the redemption store and of the merchandise in it, is a trading stamp company within the provisions of subdivision (2) of subsection (a) of § 42-126a of the General Statutes. As such it maintains the New London store for the redemption of books of trading stamps. About 1500 items of merchandise are kept on open display in the showroom portion of the store, which comprises about one-third of the entire area of the establishment. The remaining two-thirds of the area is a warehouse, wherein are kept prepackaged items identical with those on display. The merchandising practice of S & H is to exhaust the prepackaged warehouse stock of any given article before resorting to the article on display. The customer may acquire any item of merchandise in stock by surrendering the number of books of trading stamps designated on the item as its redemption cost.

The state makes much of the fact that one redeeming stamps in merchandise is required to pay any state sales tax and federal excise tax which would have been applicable had the article been purchased for cash. Whether there was a taxable transfer of property for a consideration within the purview of either state or federal tax laws is of no significance in this case. Nor is it of significance that it might be possible to persuade those in charge of the redemption center to sell some item of merchandise

for cash. Practically any piece of property owned by anyone can be purchased at some price, yet no one would claim, merely from that fact, that the property was "offered or exposed for sale" in any ordinary meaning of the quoted phrase.

It is true that, pursuant to the requirements of subdivisions (1) and (2) of subsection (b) of § 42-126a, each S & H stamp has a cash redemption value, and the holder of a book of such stamps might, at his election, present it at the S & H redemption center for redemption in cash rather than in merchandise. The cash redemption value of the book, however, is substantially less than its value if redeemed in merchandise. Of course, the mere fact that trading stamp books may be redeemed for cash would have no tendency to indicate that the merchandise in the store was "offered or exposed for sale."

There was no claim of proof in the finding that the articles were priced in terms of money as distinguished from their cost in terms of trading stamp books or that any material amount of merchandise, if indeed any, was sold for cash or credit as distinguished from being redeemed for books of trading stamps.

"In the absence of anything in a statute to indicate the contrary, and we find nothing here, 'words and phrases shall be construed according to the commonly approved usage of the language . . .' . General Statutes § 1-1." *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. Certainly the commonly approved usage of the quoted phrase of the statute embraces goods which, in the ordinary course of business, are offered or exposed for sale for a monetary consideration to be paid in cash or credit. Where the consideration or medium of

exchange normally contemplated and utilized in the sale of goods consists of trading stamp books, rather than cash or credit, those goods would not fall within the commonly approved usage of the quoted language.

There is another compelling reason in support of this conclusion. Any larceny of goods from such a redemption center as this would clearly fall within the provisions of the general larceny statute. General Statutes § 53-63 (a). This would be true whether the goods were stolen from display or warehouse stock. But the theft of goods of any given value under the shoplifting provision, subsection (b), of the same statute is generally punishable by a more severe penalty. That was the case here. The burden of proving any additional element essential to bring a larceny into the provisions of subsection (b) rests on the state. The same rule applies as in other statutes providing a more severe penalty for the theft of certain specified types of property such as a motor vehicle (§ 53-57), a bicycle (§ 53-58) or a horse or mule. § 53-59. This is but an application of the familiar rule that the burden of proving each essential element of the crime charged is on the state. Here the crime charged under the first count was not general larceny under subsection (a) of § 53-63 but larceny of "goods . . . offered or exposed for sale by any store or other mercantile establishment" under subsection (b).

While a criminal statute is not to be defeated by an unreasonably strict construction of its language, it must be rather strictly construed so that the conduct made criminal will be ascertainable with reasonable certainty from a careful reading of the statute. A corollary to this is the rule that the meaning of a penal statute "cannot be extended by pre-

sumption or intendment." *State* v. *Zazzaro,* 128 Conn. 160, 167, 20 A.2d 737.

On the basis of the finding, goods in this redemption store are not sold for cash or credit in the ordinary course of business. The normal, if not practically the exclusive, course of business followed by S & H, as disclosed by the finding, is the exchange of merchandise for books of S & H trading stamps. If the merchandise is ever sold for cash or credit, such a transaction is the rare exception and not the rule. It is clear that the court committed material error in charging the jury that as a matter of law a larceny of goods in the redemption center would constitute a larceny of "goods . . . offered or exposed for sale" within the purview of subsection (b) of § 53-63 of the General Statutes. This would be true whether the goods were stolen from display or warehouse stock. It is therefore unnecessary to consider whether the S & H redemption center was a "store or other mercantile establishment" within the meaning of subsection (b). A new trial of each defendant must be had on the first count of the information.

## II

While this determination is dispositive of the appeal in each case, it may be helpful on the retrial briefly to discuss certain other matters likely to arise.

One such matter is the defendants' claim of error in the denial of a motion to suppress, as illegally obtained, certain evidence found in the defendants' car when they were apprehended in Hartford and in the admission of this evidence, over the defendants' objection and exception, at the trial. See *DiBella* v. *United States,* 369 U.S. 121, 129, 82 S. Ct.

654, 7 L. Ed. 2d 614; *State* v. *Mariano,* 152 Conn. 85, 90, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962.

Admittedly, the Hartford police had no warrant, either to search the car or to arrest the defendants, and the claim of illegality in the search and seizure is based on the further claim that the defendants were illegally arrested in Hartford. No assignments of error seeking any corrections in the subordinate facts or claims of proof in the findings material to this claim of illegal arrest are pursued in the brief, and they are treated as abandoned. *State* v. *Harris,* 147 Conn. 589, 591, 164 A.2d 399.

The evidence sought to be suppressed and to which objection was interposed at the trial consisted of merchandise seized a few hours after the larceny when, in response to a teletype message from the New London police, which passed through the chain of command in the Hartford police department, the defendants were apprehended in Hartford by Hartford police officers. The teletype message stated that goods had been "stolen from the S H Green Stamp store" in New London and had a value of $138. The defendants claim (1) that this teletype message charged only a general larceny, which would fall within subsection (a) of General Statutes § 53-63; (2) that since the stated value of the stolen property was less than $250, the larceny, under § 1-1 of the General Statutes, could not constitute a felony but at most could be only a misdemeanor; (3) that under General Statutes § 6-49, governing arrests without warrant, an arrest for a misdemeanor could be made only for one committed "in . . . [the] jurisdiction" of the arresting officer, which in this case was Hartford; and (4) that here

the property was stolen, and therefore the offense was committed, in New London.

Under our law, larceny is a continuing crime, and if the defendants, with a continuous felonious intent, transported by automobile into Hartford property stolen in New London, they committed larceny in Hartford even though the act of larceny originated in New London. *State* v. *Cummings,* 33 Conn. 260, 264; *State* v. *Pambianchi,* 139 Conn. 543, 547, 95 A.2d 695. This seems to be in accord with the general rule. 32 Am. Jur., Larceny, § 97; 2 Wharton, Criminal Law and Procedure § 484. Thus the larceny, even if it was a misdemeanor, was being committed in Hartford at the very moment the Hartford police apprehended the defendants in their car, which was then loaded with the merchandise stolen from the S & H store in New London. On this ground alone, the defendants' claim must fail, and we need not consider any other claims in this connection.

One other matter perhaps should be mentioned. The defendants' brief, apparently quite properly, does not attack the jury's conviction of McCrary as a second offender under the second part of the information in his case. Thus the issue under the second part should not be retried. But since it affects merely the penalty to be imposed in case of conviction under the first part of the information, it remains innocuous and ineffective unless and until McCrary is again convicted under the first part of the information of a crime the penalty for which would be affected, under General Statutes § 54-118, by his prior conviction of the second-offender charge under the second part of the information. See *State* v. *Grady,* 153 Conn. 26, 31, 211 A.2d 674.

Of course the acquittal of each defendant under

the second count also stands unaffected by the order for a retrial.

There is error as to the first count only in each case, the judgment of conviction under the first count of the information against each defendant is set aside and a new trial is ordered as to that count only in each case.

In this opinion the other judges concurred.