West Hartford Education Association *v.* West Hartford Board of Education et al.

Superior Court     Hartford County     File No. 153716

Memorandum filed February 23, 1968

*Hoppin, Carey & Powell,* of Hartford, for the plaintiff.

*Shipman & Goodwin,* of Hartford, for the defendants.

PALMER, J. This is a proceeding held on the prayer in the plaintiff's complaint for a temporary injunction restraining the defendants from proceeding further with certain arbitration proceedings until the final determination of this cause. The plaintiff is a voluntary unincorporated association whose membership is composed of certificated professional employees of the defendant West Hartford board of education, hereinafter sometimes called the board. The defendant Charles O. Richter is the superintendent of schools in West Hartford.

The plaintiff has been designated as the exclusive representative of the certificated professional employees of the board for the purpose of negotiating with respect to salary schedules and personnel policies relative to the employment of certificated professional employees. On February 1, 1967, the board voted to designate Richter "as its authorized representative to meet with the teachers association [the plaintiff] for the purpose of bargaining as provided by" § 10-153d of the General Statutes. The plaintiff and the board, acting through its representative Richter, have attempted to negotiate the terms and conditions of employment of the cer-

tificated professional employees of the board. They have twice disagreed as to the terms and conditions of employment, and have twice submitted the matters in disagreement to the secretary of the state board of education for mediation, pursuant to § 10-153f (a) of the General Statutes. These attempts at mediation failed to resolve their disagreement.

Section 10-153f (b) provides: "In the event mediation by the secretary of the state board of education . . . fails to resolve the disagreement, either party may submit the unresolved issue or issues to an impartial board of three arbitrators. Each party to the dispute shall designate one member of the board and the arbitrators so selected shall select the third. The decision of such board, after hearing all the issues, shall be advisory and shall not be binding upon the parties to the dispute." The plaintiff elected to submit the unresolved issues to such arbitration and has designated one arbitrator. The board has designated the defendant Willis G. Parsons, Jr., as an arbitrator. It is the plaintiff's claim that the board's designation of Parsons does not comply with the requirements of § 10-153f (b) because "Parsons is not impartial in respect to the matters at issue." At the hearing hereon, it was stipulated that the sole issue is the question of the impartiality of Parsons and that if the undersigned judge finds that Parsons is not impartial, then a temporary injunction should issue.

The defendant Parsons is an attorney who practices in Hartford and resides in West Hartford. He was a member of the defendant board of education for a period of eight years from 1957 to 1965, and he was chairman of that board for six years from 1959 to 1965. He served with three members of the board whose terms expired just prior to the hearing hereon. The defendant Richter, who is the

board's authorized representative to meet with the plaintiff for the purpose of bargaining, was hired as superintendent of schools when Parsons was chairman of the board. After Richter was hired as superintendent, Parsons acted as his personal attorney in connection with several matters. In the spring of 1966, when Parsons was no longer a member of the board, he acted as Richter's attorney in respect to the negotiation of the renewal of Richter's contract of employment with the board. In this connection, he communicated with one of the present members of the board (a defendant herein) who acted for the board on that occasion.

While Parsons was a member of the board, Richter invited the members of the school board to social functions at his home from time to time, and Parsons has been at Richter's home on such occasions. Richter has been at Parsons' home as a guest, and they have met at many school functions, retirement parties and graduation ceremonies. About four or five months before the hearing hereon and before Parsons' selection as arbitrator by the board, he was invited to Richter's home with a number of other persons, including former members of the board, where there was a general discussion of the history of the controversy that later resulted in the present action. At that time, Richter and members of his staff put forward the board's position in respect to the chronology of events and the impasse between the board and the teachers. Parsons testified that at that time there was no question in his mind that he was getting the board's version of what happened; that he did not think it was an attempt to be totally dispassionate; and that he accepted it as such. Much of the discussion at the meeting related to the public relations aspect of the situation in the sense of the public's understanding of the problem between the board and the

teachers. Comments from those present were solicited, and several suggestions were made.

During the time that Parsons was a member and chairman of the board, he had occasion to consider and deal with some of the issues which are now the subject of disagreement between the board and the teachers and will be presented to the board of arbitrators, although the exact items as to which there is now disagreement were not before the board during his incumbency. None of the present members of the board served during Parsons' membership, but three former members who did serve while Parsons was chairman were members of the board until shortly before the hearing hereon and consequently did participate in regard to the negotiations and discussions with the plaintiff until just before the hearing. The board's present stance in the disagreement with the teachers was determined by a board of which they were members.

As previously noted, § 10-153f (b) provides that if mediation fails, either party may submit the unresolved issues "to an impartial board of three arbitrators," one to be designated by each party to the dispute and the two so selected to select the third. This statute became effective on June 18, 1965, and does not appear to have been the subject of prior judicial consideration. It must first be determined what is meant by the words "impartial board of three arbitrators."

The thrust of the defendants' argument, as set forth in their brief, is that the obligations of strict impartiality are to be taken as applying only to the third or neutral arbitrator, that is, the arbitrator selected by the two arbitrators designated by the parties to the dispute. The defendants cite law to the effect that an arbitrator selected by one of the contesting parties is effectually an advocate of that

party; the third party mutually selected is expected to be the impartial and final judge; and, unlike ordinary arbitration where the arbitrators are expected to be neutral and disinterested, it is anticipated that the labor and management members of a tripartite arbitration board will be somewhat partisan.

The statute in question, § 10-153f (b), does not admit of the construction urged by the defendants. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1; *State* v. *Benson,* 153 Conn. 209, 214. The statutory language, "impartial board of three arbitrators," can only mean a board consisting of three arbitrators, each of whom is impartial. If one arbitrator is not impartial, then the board is not impartial, and the statute would be violated. Accordingly, the mandate of the statute is that each individual arbitrator must be impartial.

This conclusion is bulwarked by the fact that the statute was enacted in 1965 to deal with the specific problem of disputes between boards of education and their professional employees. Such disputes are the subject of intense public interest, because public school business is public business. The statute provides that the decision of the impartial board of three arbitrators "shall be advisory and shall not be binding upon the parties to the dispute." The principal value of an advisory decision lies not only in its effect on the immediate parties to the dispute but also, and of equal importance, in its effect on the educational community affected by the dispute.

Clearly, an advisory decision arrived at by a board of three genuinely impartial arbitrators will be much more persuasive and influential in respect

to the board of education, the professional employees, and the general public of the affected community than a decision by a board consisting of two sympathizers representing the respective parties and one neutral, impartial person selected by the other two arbitrators. The purpose of an advisory decision is to influence and persuade the parties to accept that decision. Obviously, a decision by three impartial arbitrators will serve this purpose far better than a decision by a board with one impartial arbitrator. Just as obviously, a decision by a wholly impartial board will carry greater weight with the concerned public, and the attitude of the public is of crucial importance to both the board of education and the professional employees in the settlement of their disputes. The very fact that Richter held a meeting at his home where the public relations aspect of the situation and the public's understanding of the problems between the teachers and the board were discussed underlines and points up the extreme importance of public opinion in a situation of this kind. It may often be decisive. An advisory decision by three impartial arbitrators is more helpful and beneficial to the public than a decision by a board containing just one impartial arbitrator. The underlying legislative purpose of providing a means for the resolution of such disputes can best be served by a construction of the statute that requires a board of three impartial arbitrators.

The final question to be considered is whether Parsons qualifies as an impartial arbitrator within the meaning of the statute, and to make this determination it is necessary to ascertain the commonly approved usage of the word "impartial." General Statutes § 1-1. "Impartial" has been defined to mean not partial, not favoring one party more than another, unprejudiced, disinterested, indifferent, not biased in favor of one party more than another,

not disposed to prefer one party more than another, and not subject to bias or influence. See *Thompson v. Beacon Valley Rubber Co.*, 56 Conn. 493, 498; 42 C.J.S. 399; 20 Words & Phrases 289 (Perm. Ed.). "Impartiality" means "[f]reedom from bias, prejudice, passion or interest." 42 C.J.S. 399.

It should be emphasized that there is no question whatever about Parsons' honesty or his integrity. He is a highly respected practicing attorney, and no claim is made or can be made that he would be likely to be guilty of any conscious partiality or bias in performing his duties as arbitrator. But the issue is whether Parsons is impartial in the commonly approved usage and meaning of that word, and this determination must be made in the light of his relationship to the persons involved and the issues which are to be presented to the board of three arbitrators, of which he has been designated as one member by the defendant board of education. Parsons was a member of the defendant board for eight years, and its chairman for six years; he has been the personal attorney for Richter, the authorized representative of the board to bargain with the plaintiff, and is a friend of Richter of some years' standing. He attended a meeting at Richter's home at which Richter put forward the board's position with respect to the chronology of events which led to the present impasse between the board and the teachers. While a member of the board, he dealt with the teachers' association as an adverse party in respect to disputes with the board. Three former members of the board who served with Parsons participated in his selection by the board as an arbitrator. They participated in the board's determination of its position in regard to the issues in question.

In the face of these facts, Parsons would not be human if he could remain uninfluenced, unbiased

and unprejudiced. It is almost inevitable that the effect of his relationship with the persons involved and with the issues in dispute is such that he could not act as arbitrator without an unconscious bias or interest in favor of the positions taken by the board in respect to the issues between the parties. He can hardly be said to be indifferent between the parties. In a word, and with all due deference to his good faith and personal integrity, he cannot under the facts of this case be held to be impartial, and therefore he cannot serve as a member of the impartial board of arbitrators required by the statute.

As the parties stipulated that a temporary injunction should issue if the defendant Parsons is found not to be impartial, it is ordered that a temporary injunction may issue restraining the defendants from proceeding further with arbitration proceedings in accordance with § 10-153f (b) of the General Statutes until the final determination of this cause, or until further order of the court.