STATE OF CONNECTICUT *v.* LOUIS LAPIA
(12858)

PETERS, C. J., HEALEY, SHEA, DANNEHY and GLASS, Js.

510

Argued December 3, 1986—decision released March 17, 1987

*William Holden,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

DANNEHY, J. The amended information in this case was in two separate parts. The first part contained two counts. The first count accused the defendant of kidnapping in the first degree and charged that he abducted another person with the intent to violate or abuse him sexually in violation of General Statutes § 53a-92 (a) (2) (A). The second count charged him with attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70 (a).[1] The

---

[1] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the

jury returned a verdict of guilty on each count. Thereafter the defendant was presented on the second part of the information wherein it was alleged that on May 14, 1971, in the Superior Court in Fairfield, the defendant had been convicted, sentenced and imprisoned for the crime of robbery with violence in violation of General Statutes (Rev. to 1968) § 53-14. Upon his refusal to plead to the charge of being a persistent dangerous felony offender, the court ordered the entry of a plea of not guilty. The defendant then elected a jury trial and moved to have another jury impaneled for a trial on that charge. The motion was denied and the issue of the defendant's status as a persistent dangerous felony offender was submitted to the same jury that had tried him on the other charges. The defendant was convicted of being a persistent dangerous felony offender pursuant to General Statutes § 53a-40 (a) (1) (2) (B).[2]

circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

"[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-40. PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes . . . (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69,

He was sentenced to the custody of the commissioner of correction for concurrent terms of twenty-five years on the first count and ten years on the second count for a total effective sentence of twenty-five years.

On appeal the defendant contends that the evidence was insufficient to sustain a verdict of guilty on the charge of attempted sexual assault in the first degree. He does not attack the sufficiency of the evidence to sustain the conviction of kidnapping in the first degree. He also argues that the trial court erred in refusing to impanel another jury for the trial on the second part of the information.

At the outset we must reiterate that when a defendant contends that the evidence at his trial was insufficient to sustain his conviction it is not our function to weigh the evidence or to resolve questions concerning the credibility of witnesses at the trial. *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). Rather, we must look to all of the facts and circumstances in the record and decide if there is evidence from which a jury could reasonably have determined that the defendant was guilty of the crime charged beyond a reasonable doubt. *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984).

The defendant prior to trial obtained an order appointing a clinical psychologist, Arthur R. Salman, to examine the complainant and determine his competence to testify. The complainant submitted to a psychological examination. The trial judge conducted a hearing at which Salman testified, as did the complainant and his mother. On the basis of I.Q. testing and other information, Salman testified that the complainant was mentally retarded. His diagnosis of the

53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes . . . ."

complainant's condition was that the mental retardation was mild. In Salman's opinion, the complainant could recollect details and facts from his past experience with fair accuracy, knew the difference between the truth and a lie, and was competent to testify as a witness. At the close of the testimony the trial judge found that the complainant was competent to testify. The defendant did not challenge this finding.

There was evidence that at about 4 p.m. on October 28, 1983, the complainant was walking by himself on Grove Street in Bridgeport, when the defendant forcibly took him to a nearby garage. The next morning, they left the garage and went to a restaurant. After eating breakfast, they left the restaurant and walked to Fairfield. They spent the night in the cellar of an abandoned house in Southport. When morning came, the defendant told the complainant that he was taking him to a rooming house to look for a friend. When they reached the rooming house, the defendant was unable to find his friend. The two spent that night outdoors, and the next morning they went to a shed on private property where the owner of the property discovered them. A neighbor was called to investigate and found the defendant and the complainant in the shed. The police arrived minutes later and the complainant told them he had been kidnapped. Officer Patrick Philbin of the Fairfield police department testified that the complainant's speech was incoherent, that he was excited, extremely dirty, that his face was scratched, his eye blackened, and that he had rope marks on his wrists. Officer John Flanagan, who later interviewed the complainant, corroborated the testimony concerning the complainant's appearance.

The complainant testified that for the greater part of three days he had been bound and blindfolded, that he had been beaten on three different occasions, and that the defendant had threatened to kill his parents.

He also testified that he had been asked to perform oral sex. When the complainant refused to comply with this request, the defendant tightened the ropes which bound the complainant and threatened to beat him again.

The jury also heard the testimony of the defendant. He denied that he had beaten the complainant or that he had asked him to engage in any sexual act. The defendant also testified that the complainant had caused his own injuries by falling from a railing onto a cellar door.

The second count in the first part of the amended information alleged that the defendant had attempted to compel another person to engage in sexual intercourse by the use of force against that person, in violation of General Statutes § 53a-70 (a). The complainant testified that he was asked to perform oral sex. Sexual intercourse includes "fellatio . . . between persons regardless of sex." General Statutes § 53a-65 (2). According to the complainant, he was beaten, bound and blindfolded during his captivity. He further testified that upon his refusal to perform oral sex the defendant drew the rope around his neck tighter, and threatened to beat him again. The phrase "use of force" means the use of actual physical force or violence or superior strength against the victim. General Statutes § 53a-65 (7) (B).

General Statutes § 53a-49 (a), under which the second count in the amended information was drawn, provides in pertinent part that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." The mere preparation to do something, absent

an act constituting a substantial step toward the commission of a specific offense, is insufficient to sustain a conviction for criminal attempt. *State* v. *Mazzadra,* 141 Conn. 731, 736, 109 A.2d 873 (1954). In prior cases, we have explained that "the attempt is complete and punishable, when an act is done with an intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." *State* v. *Wilson,* 30 Conn. 500, 506 (1862); *State* v. *Green,* 194 Conn. 258, 276, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); *State* v. *Mazzadra,* supra.

On this appeal the defendant's actual intent is not in issue. The jury by its verdict found that there was no reasonable doubt that the defendant had abducted another person with the intent to abuse him sexually. The defendant's intention to commit a sexual assault was amply demonstrated by the testimony that he had asked the victim to perform oral sex. The remaining question is whether his actions went beyond the stage of mere preparation.

The defendant's argument that his conduct "remained in the zone of preparation" because no sexual assault occurred is without merit. Under our law, as well as under the Model Penal Code, to constitute a substantial step, the conduct must be "strongly corroborative of the actor's criminal purpose." *State* v. *Green,* supra; Model Penal Code (1985) § 5.01 (2). This standard differs from other approaches to the law of criminal attempt in that it focuses on what the actor has *already done* and not on what remains to be done. See Model Penal Code (1985) § 5.01, comment 6. Whether an actor's conduct amounts to a "substantial step" depends upon the nature of the intended crime and the facts of the particular case. *State* v. *Green,* supra, 277. "A substantial step in . . . robbery . . .

may be quite different from that in arson, rape, or some other crime . . . ." *State* v. *LaTraverse,* 443 A.2d 890, 895 (R.I. 1982).

In the present case, the defendant does not dispute the fact that he kidnapped the complainant. His conduct obviously fits a pattern that in its totality manifests an attempt to commit sexual assault. The evidence shows that the defendant abducted a mentally retarded person, moving him around to conceal his whereabouts, that he bound, blindfolded and beat his victim, that he terrified him by threats of harm to his parents, and that he threatened to beat him and tightened the ropes on account of his refusal to perform oral sex. The evidence clearly revealed that the complainant had had little food during the three day period, and that he was very frightened. What constitutes a substantial step in a given case is a question of fact. *State* v. *Green,* supra. Under the facts of this case, it was not unreasonable for the jury to conclude that the defendant had progressed so far in the perpetration of the intended sexual assault, by requesting that the complainant perform oral sex and by tightening the ropes upon his refusal, that his conduct constituted a substantial step strongly corroborative of his criminal purpose. See *State* v. *Mazzadra,* supra, 737. While the evidence was conflicting in certain areas, the credibility of the witnesses and the weight to be given to their testimony was a question for the determination of the jury, and we will not substitute our judgment for that of the jury. The jury's finding that the defendant was guilty of attempted sexual assault in the first degree will therefore not be disturbed.

The defendant next contends that the trial court erred in refusing to grant his motion for a different jury panel on the second part of the information which charged him with being a persistent dangerous felony offender. During the trial on the first part of the infor-

mation, the defendant testified that he knew a certain person "from jails and Somers and stuff like that." Further questioning revealed that the defendant had first met this person thirteen or fourteen years ago "at Somers." It is the defendant's position that this testimony prejudiced the jury and made it incapable of rendering a fair and impartial verdict on the second part of the information. To ensure his constitutional right to a fair trial, he argues, the judge should have granted his motion and impaneled a new jury. We disagree.

Section 840 of the Connecticut Practice Book provides that when an information is in two parts, and an accused is found guilty on the first part, the judicial authority may decide whether the trial on the second part should "be had to the same or to another jury."[3] When the court in its discretion decides that the second part should be tried to the same jury, this decision will be reversed only where a clear abuse of discretion is demonstrated. *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984); *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975). In our view, the defendant has not sustained this heavy burden of demonstrating an abuse of discretion.

We are unconvinced that our holding in *State* v. *Grady,* 153 Conn. 26, 211 A.2d 674 (1965), upon which the defendant heavily relies, requires a reversal of the trial judge's action in this case. In *Grady* the defendant was compelled, over objection, to testify in the trial on the first part of a two part information, that he had previously been convicted of a felony. Id., 30. During

---

[3] Practice Book § 840 provides: "When an information or indictment is divided into two parts under Sec. 619, on a finding of guilty on the first part of the information or indictment, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information or indictment, such trial may be had to the same or to another jury as the judicial authority may direct."

the trial to a new jury on the second part of the information which charged him with being a "habitual criminal" under General Statutes (1958 Rev.) § 54-121, his testimony about the prior conviction was introduced by the state. Id., 32. We held that the use of the compelled testimony to prove an essential element of the state's case on the second part of the information violated article first, § 9, of the Connecticut constitution and the fifth amendment to the federal constitution. Id., 34.

Unlike *Grady,* the state in the present case did not attempt, during the trial on the first part, to impeach the defendant with the prior conviction. In addition, none of his testimony from the first trial was introduced during his trial on the persistent dangerous felony offender charge. During the trial on the second part, the court charged the jury on the defendant's right not to testify and on the state's burden of proving the elements of the crime beyond a reasonable doubt. In short, the defendant has not sustained his heavy burden of proving that the court abused its discretion and that any injustice was done to him by the court's refusal to grant his motion. *State v. Brown,* supra.

We note, finally, that the trial judge's actions in this case were in accordance with the procedure we outlined over sixty-five years ago in *State v. Ferrone,* 96 Conn. 160, 175, 113 A. 452 (1921).[4] The United States

---

[4] In *State v. Ferrone,* 96 Conn. 160, 175, 113 A. 452 (1921), we detailed the following procedure: "In the absence of statutory regulation in this State, it is our opinion that a procedure similar to that prescribed by an English statute (24 & 25 Vict. c. 99, s. 37) should be followed. *Reg.* v. *Martin,* L. R. 1 Cr. C. 214. The information should be divided into two parts. In the first, the particular offense with which the accused is charged should be set forth; and this should be upon the first page of the information and signed by the prosecuting officer. In the second part, former convictions should be alleged, and this should be upon the second page of the information, separable from the first page, and signed by the prosecuting officer. The entire information should be read to the accused and his plea taken

Supreme Court referred to *Ferrone* in *Spencer* v. *Texas,* 385 U.S. 554, 567, 87 S. Ct. 648, 17 L. Ed. 2d 606, reh. denied, 386 U.S. 969, 87 S. Ct. 1015, 18 L. Ed. 2d 125 (1967), a case in which it discussed the procedures used by various states in trying habitual criminals. The *Spencer* court, in dicta, indicated its belief that the procedure utilized in our jurisdiction was probably the fairest and best recidivist trial procedure in the country. Id.[5] In light of *Spencer,* we are unconvinced that the procedure followed in the present case violated the defendant's constitutional rights or that the court abused its discretion in deciding not to impanel another jury.

There is no error.

In this opinion the other justices concurred.

---

in the absence of the jurors. When the jury has been impaneled and sworn, the clerk should read to them only that part of the information which sets forth the crime for which the accused is to be tried. The trial should then proceed in every respect as if there were no allegations of former convictions, of which no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court. When the jury retire to consider their verdict, only the first page of the information, on which the crime charged is set out, should be given to them. If they return a verdict of guilty, the second part of the information, in which former convictions are alleged, should be read to them without reswearing them, and they should be charged to inquire on that issue."

[5] After setting out the procedure detailed in *State* v. *Ferrone,* 96 Conn. 160, 175, 113 A. 452 (1921), the *Spencer* court stated: "To say that the two-stage jury trial in the English-Connecticut style is probably the fairest, as some commentators and courts have suggested, and with which we might well agree were the matter before us in a legislative or rule-making context, is a far cry from a constitutional determination that this method of handling the problem is compelled by the Fourteenth Amendment." *Spencer* v. *Texas,* 385 U.S. 554, 567–68, 87 S. Ct. 648, 17 L. Ed. 2d 606, reh. denied, 386 U.S. 969, 87 S. Ct. 1015, 18 L. Ed. 2d 125 (1967).