STATE OF CONNECTICUT *v.* GARY G. CASTONGUAY
(13498)
(13515)

PETERS, C. J., COVELLO, HULL, BORDEN and SANTANIELLO, Js.

Argued February 19—decision released May 7, 1991

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant in the first appeal, appellee in the second appeal (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *James Thomas,* assistant state's attorney, for the appellee in the first appeal, appellant in the second appeal (state).

PETERS, C. J. The principal issue in this appeal is whether a criminal defendant's prior testimony, voluntarily given at a trial that resulted in a conviction subsequently overturned on appeal, may properly be used as substantive evidence against the defendant in a subsequent retrial at which he elects not to testify. In a prior case, *State* v. *Castonguay,* 194 Conn. 416, 481 A.2d 56 (1984) (*Castonguay I*), this court overturned the convictions of the defendant, Gary G. Castonguay, for capital felony, in violation of General Statutes §§ 53a-54a (a) and (c) and 53a-54b, and felony murder, in violation of General Statutes §§ 53a-54c and 53a-54a. The defendant had been charged in a two count indictment with those crimes for the November 21, 1977

shooting death of Plainville police officer Robert M. Holcomb, which occurred during the course of a burglary of the residence of Dennis Thompson (the Thompson burglary). A jury found the defendant guilty on both counts.

Following our reversal and order of a new trial in *Castonguay I,* the state retried the defendant for the same crimes. Although the defendant elected not to testify at his retrial, the state nonetheless introduced portions of the defendant's testimony from his cross-examination in his first trial. A jury again found the defendant guilty on both counts. The trial court imposed upon the defendant two consecutive sentences of twenty-five years to life. Pursuant to the defendant's motion, the trial court vacated one of the two sentences and rendered a new judgment. The defendant now appeals to this court from the judgment on the remaining conviction.[1] We affirm the judgment of the trial court.

I

The defendant argues that the use of the transcript of his testimony from the first trial as substantive evidence at his retrial violated his privilege against compelled self-incrimination. The state counters that neither the federal nor the state constitution required the exclusion of that testimony under the circumstances of this case. We agree with the state.

The record reveals that the defendant elected in *Castonguay I* to take the stand in his own defense. He testified on direct examination that he neither participated in the Thompson burglary nor shot Holcomb. On cross-examination, however, the defendant admitted

---

[1] The state received permission to appeal the trial court's decision vacating one of the two twenty-five years to life sentences originally imposed upon the defendant.

to: (1) having committed two other burglaries, the Crispino and Fennessey burglaries, that occurred prior to the Thompson burglary; (2) habitually owning pry bars of a size and shape used in the Fennessey burglary; and (3) grinding the serial numbers off the gun that had been stolen during the Fennessey burglary and later used to kill Holcomb. For reasons unrelated to the defendant's testimony, we overturned the defendant's conviction in that case and ordered a new trial.

At the defendant's retrial, the state sought to introduce as substantive evidence, in its case-in-chief, portions of the testimony elicited from the defendant during cross-examination in his first trial. These admissions were potentially damaging when linked to independent evidence that the state had offered to prove that the individual responsible for the Crispino and Fennessey burglaries had also committed the Thompson burglary and shot Holcomb.

The defendant moved, in limine, for exclusion of the admissions, claiming that their use would violate his privilege against self-incrimination. After argument, the trial court ruled that because the defendant's testimony in his first trial had not been compelled, the use of the admissions in the retrial did not violate that privilege. The defendant then sought to introduce from the first trial that portion of his direct examination testimony in which he had denied his participation in the Thompson burglary and in the shooting of Holcomb. The state objected, arguing that the testimony in question was unrelated to the admissions that the state sought to introduce and, therefore, inadmissible for the purpose of placing those admissions in context. Furthermore, because the defendant was available to testify, his offer could not be admitted into evidence under the prior testimony exception to the hearsay rule. The trial court accordingly denied the defendant's request.

On appeal, the defendant argues that: (1) the admission of any of his prior testimony at his retrial violated his privilege against compelled self-incrimination; (2) assuming the admissibility of the cross-examination testimony from *Castonguay I,* the trial court nonetheless erred in refusing also to admit portions of his direct testimony; and (3) the trial court incorrectly instructed the jury on the use of the admitted prior testimony. The defendant also raises eight additional claims of error. We consider each of these arguments in turn.

## A

In *Harrison* v. *United States,* 392 U.S. 219, 222, 88 S. Ct. 2008, 20 L. Ed. 2d 1047 (1968), the United States Supreme Court recognized the "general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." A considerable body of federal and state decisional law supports that rule. See, e.g., *United States* v. *Mortensen,* 860 F.2d 948, 951 (9th Cir. 1988); *United States* v. *Nell,* 570 F.2d 1251, 1259 (5th Cir. 1978); *Edmonds* v. *United States,* 273 F.2d 108, 112–13 (D.C. Cir. 1959); *Bloodsworth* v. *State,* 76 Md. App. 23, 34, 543 A.2d 382 (1988); see also annot., 5 A.L.R.2d 1406, 1411 (1949). These cases establish that, unless a defendant's prior testimony was involuntary or compelled in a constitutional sense, the use of that testimony against the defendant in a subsequent trial does not violate his privilege against self-incrimination under the fifth and fourteenth amendments to the federal constitution.

The defendant concedes that his testimony at the first trial was not compelled,[2] and that, under *Harrison* v. *United States,* supra, the state's use of portions of his

---

[2] The defendant, although conceding that his testimony in his first trial was not compelled, argues that the record is devoid of any indication that he was counseled that his testimony could be used against him in a future trial. Presumably, we are to infer from this argument that the defendant's

testimony from *Castonguay I* did not violate federal constitutional law. Nonetheless, the defendant maintains that the use of his prior testimony was improper as a matter of state law. That argument comes to us in a variety of ways. The defendant first argues that any waiver of his privilege against compelled self-incrimination was limited to his first trial and that he did not independently waive his privilege at his retrial. Consequently, the state's use of his testimony at the retrial was improper. In a related argument, he contends that his first trial, having been reversed by this court in *Castonguay I*, was a nullity and, therefore, that his testimony therein could not be admitted against him at his retrial. Last, the defendant argues that the Connecticut constitution, article first, § 8, bars the use of his prior testimony at his retrial. For the reasons stated below, we find each of these arguments unpersuasive.

B

The defendant relies on this court's decision in *State* v. *Grady,* 153 Conn. 26, 34, 211 A.2d 674 (1965), for the proposition that a defendant's waiver of his privi-

waiver of his privilege against self-incrimination at the first trial was not an informed one and, therefore, was not truly voluntary. We decline to draw such an inference.

The record indicates that, immediately prior to the defendant's testifying at his first trial, the trial court questioned the defendant and his attorney about the decision to testify. The defendant told the court that he had discussed the matter with his counsel and elected to testify. In allowing the defendant to take the stand, the trial court implicitly found that the defendant had knowingly and intelligently waived his privilege against self-incrimination.

Because a criminal defendant's decision to testify is often strategic or tactical, and is made only after serious consultation with counsel about the advantages and disadvantages thereof, it is one we are disinclined to second guess. Cf. *Brooks* v. *Tennessee,* 406 U.S. 605, 607–609, 92 S. Ct. 1891, 32 L. Ed. 2d 358 (1972). We can only assume, without more than a bare assertion to the contrary, that counsel provided the defendant with the information necessary to make an informed decision whether to testify.

lege against self-incrimination is limited to the particular proceeding in which he volunteers testimony. The defendant argues that his retrial constituted a separate, distinct proceeding from his first trial and that, under *Grady,* his prior testimony was, therefore, inadmissible at the retrial. We are unpersuaded.

In *Grady,* the defendant was convicted under a two-part information that charged him in the first part with several counts of breaking and entering and related crimes, and, in the second part, with being an "habitual criminal." Id., 29. The defendant elected a jury trial on the first part of the information and took the stand in his own behalf. He objected on cross-examination, however, to certain questions, the answers to which he knew would be used against him in his trial on the second part. The trial court nonetheless ordered the defendant to answer the questions and, as anticipated, those answers were used against him in the subsequent trial.

The decision in *Grady* turned on this court's determination that the defendant's responses to the challenged questions had been, in some sense, unconstitutionally compelled, and, therefore, that their use in the subsequent trial violated the defendant's federal and state constitutional privileges against compelled self-incrimination.[3] Id., 34. In sharp contrast to *Grady,* however, no element of unconstitutional compulsion is present in this case, as the defendant conceded, and as the discussion below illustrates.

---

[3] We express no opinion on the merits of the decision in *State* v. *Grady,* 153 Conn. 26, 211 A.2d 674 (1965). The parties did not address that issue in their briefs or at oral argument and we are disinclined to reconsider that decision in the absence of direct argument by the parties. Thus, we conclude only that the decision in that case, assuming its continued validity, does not support the defendant's argument that the state's use of his prior testimony at his retrial was improper.

Additionally, although there is language in *Grady* that even an accused's *voluntary* waiver of his privilege against self-incrimination is limited to the particular proceeding in which he testifies, that limitation applies only to the power of the state, in a separate, yet related proceeding, to recall the defendant to the stand and subject him to additional cross-examination. It does not limit the subsequent use of a transcript of the defendant's prior voluntary testimony. See, e.g., annot., 5 A.L.R.2d, supra, 1407; 8 J. Wigmore, Evidence (McNaughton Rev. 1961) § 2276 (4) and (5), pp. 470–72.

The defendant next argues that this court's reversal of his conviction in *Castonguay I* rendered his first trial a nullity. He directs our attention to *State* v. *Darwin,* 161 Conn. 413, 419, 288 A.2d 422 (1971), wherein we stated: "The purpose of a new trial is to have an error-free trial. The trial is 'new' in every sense. It is as if no trial had ever taken place." The defendant asserts that the state's use of his prior testimony at his retrial was inconsistent with our decision in *Darwin.* We disagree.

The weakness in the defendant's argument lies in its attempt to apply language in *Darwin* outside its proper context. At issue in that case was the right of a defendant to object at a retrial to evidence that had been illegally seized and introduced into evidence without objection at the first trial. We stated that "[i]t would not be compatible with the theory of a new trial to tie the hands of counsel so that any errors waived in the first trial are forever waived." Id., 419. We held, therefore, that the failure of the defendant to object to the illegally seized evidence at the first trial did not constitute a waiver of the right to object at a retrial. Id.

Given the issue and holding in *Darwin,* the defendant's effort to construe its language so as to bar the

state's use of his prior testimony on the facts of this case is unavailing. There was no impropriety with respect to the admissibility of the defendant's prior testimony to which he failed to object. We decline to broaden our holding in *Darwin* to encompass the outcome that the defendant desires.

The defendant next argues that the Connecticut constitution bars the state's use of his prior testimony. He bases this argument on a textual comparison of article first, § 8 of the state constitution with the fifth amendment to the federal constitution. The former provides that "[n]o person shall be compelled to *give evidence* against himself"; (emphasis added); while the latter provides that no person "shall be compelled in any criminal case to be *a witness* against himself." (Emphasis added.) The defendant couples this claim to an alleged error in the trial court's instruction to the jury regarding the prior testimony. The defendant argues that because the court instructed the jury that it could consider the prior testimony for any purpose, "as if" the defendant had actually testified in court, the testimony's introduction was tantamount to compelling the defendant to "give evidence" against himself in violation of the state constitution.

We find the defendant's argument unpersuasive. In *State* v. *Asherman*, 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), we considered, and rejected, an argument virtually identical to that proffered by the defendant. The defendant in *Asherman* had argued, on the basis of the textual distinction noted above, that article first, § 8 of the state constitution barred the use of nontestimonial, as well as testimonial, evidence that the defendant had been compelled to provide. We reviewed the history of the state constitutional privilege at length and concluded that there was no con-

stitutional distinction between "being a witness" and "giving evidence" against oneself. Id., 714–15. Beyond the textual distinction that we previously rejected in *Asherman,* the defendant offers no additional historical argument or other basis on which to construe the state constitutional privilege against compelled self-incrimination more broadly than its federal counterpart. We therefore decline to depart from our reasoning in *Asherman.*

The defendant's effort to equate the trial court's jury instruction with a form of compulsion is similarly unpersuasive. Despite the defendant's contrary assertion, the trial court's jury instruction did not physically or morally compel the defendant to do anything at all, much less to incriminate himself, at the retrial. See *Fisher* v. *United States,* 425 U.S. 391, 397, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976), and cases cited therein.

C

The defendant next claims that he was deprived of due process and a fair trial when the trial court refused to allow him to introduce portions of his direct testimony from his first trial to balance the state's offer of his cross-examination testimony. The state counters that the statements comprising the defendant's offer were self-serving, inadmissible hearsay, were unrelated to the admissions upon which the state intended to rely and, therefore, did not serve to place the state's offer in context. We agree with the state.

Our cases have long held that, when one party to a litigation or prosecution seeks to introduce admissions that constitute only a portion of a conversation, the opposing party may introduce other relevant portions of the conversation, irrespective of whether they are self-serving or hearsay. *Rokus* v. *Bridgeport,* 191 Conn. 62, 68–69, 463 A.2d 252 (1983); *State* v. *Hicks,* 169

Conn. 581, 589, 363 A.2d 1081 (1975); *State* v. *Savage,* 161 Conn. 445, 448, 290 A.2d 221 (1971); see also *Sullivan* v. *Nesbit,* 97 Conn. 474, 477, 117 A. 502 (1922); *Clark* v. *Smith,* 10 Conn. 1, 5 (1833); *Ives* v. *Bartholomew,* 9 Conn. 309, 312 (1832). The purpose of this rule is to ensure that statements placed in evidence are not taken out of context. *State* v. *Hicks,* supra. This purpose also demarcates the rule's boundaries; a party seeking to introduce selected statements under the rule must show that those statements are, in fact, relevant to, and within the context of, an opponent's offer and, therefore, are part of a single conversation.

Although the defendant claims that the trial court's decision excluding his offer of prior direct testimony was fundamentally unfair and therefore deprived him of his rights to due process and a fair trial, his claim, properly viewed, is one challenging the trial court's decision on evidentiary grounds only. See *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988). Because a trial court's ruling on such grounds is accorded great deference, we will reverse such a ruling only in cases manifesting an abuse of discretion and resulting in substantial prejudice or injustice to the defendant. *State* v. *Hernandez,* 204 Conn. 377, 390, 528 A.2d 794 (1987); *State* v. *Martin,* 170 Conn. 161, 166, 365 A.2d 104 (1976).

The defendant sought to introduce testimony in which he denied his participation in the Thompson burglary and in the shooting of Holcomb. That testimony, however, does not alter the context of the portion of his prior testimony wherein he admitted committing the Crispino and Fennessey burglaries. The defendant expressly conceded this point in arguments before the trial court on the admissibility of the prior testimony. Nonetheless, he argues that, as a matter of fundamental fairness, he should have been allowed to introduce

into evidence the statements in which he denied involvement in the shooting of Holcomb. We do not concur.

When a defendant elects to testify, he may offer any explanation of the events for which he is being tried that he desires, subject, of course, to cross-examination. That right, however, applies only when the defendant actually takes the stand in his own defense. It does not enable him to introduce, through another witness, self-serving statements that are otherwise inadmissible hearsay and that do not serve to place an opponent's offer in a proper context. See *Rokus* v. *Bridgeport,* supra, 69. For these reasons, the trial court did not abuse its discretion in excluding the defendant's offer.

## D

The defendant next argues that the trial court improperly instructed the jury on the use of the transcript of the defendant's cross-examination in *Castonguay I,* during which the defendant admitted to the Crispino and Fennessey burglaries. He claims that the trial court's instruction impermissibly reduced the state's burden of proof by permitting the jury, contrary to law, to find that the defendant had committed the crime with which he was charged because, at least in part, it did not believe the defendant's plea of not guilty. We are unpersuaded.

Our review of the defendant's claim is informed by the established rule that jury instructions are not to be subjected to microscopic examination with an eye toward discovering possible inaccuracies. Rather, we consider whether it was reasonably possible that the charge as a whole misled the jury. *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991); *State* v. *Dyson,* 217 Conn. 498, 501, 586 A.2d 610 (1991).

The trial court twice instructed the jury on the evidentiary use of the transcript. When the state ini-

tially read portions of the transcript into evidence, the trial court instructed the jury that it could use the statements "for any purpose which [the jury] may see fit as if they were now being testified in court under oath." The court also stated in its final charge to the jury that "unlike other out-of-court statements, of course, the defendant's out-of-court statements are offered for the truth of such statements, which may affect the credit of his plea of not guilty. So, unlike other witnesses, he does not have to testify in order to have his inconsistent statements or admissions placed before the jury or fact-finders because he has pleaded not guilty. You must examine such statements as to whether they were made, and if you credit them that they were made, you may use them just as you would any other evidence produced in this case and to be examined in the same manner as if given in this trial."

We interpret the trial court's initial charge, which equated the transcript testimony with in-court testimony given under oath during the retrial, as instructing the jury that it could consider the defendant's prior testimony for the truth of the matters asserted. That charge was correct. See *State* v. *DeMatteo,* 186 Conn. 696, 702, 443 A.2d 915 (1982); *State* v. *Moynahan,* 164 Conn. 560, 576, 325 A.2d 199 (1973).

The portion of the trial court's final charge quoted above, however, did not comport with the rule established in *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Prior to *Stepney,* our cases had often been read to require that a party's statements, offered as admissions at trial by an opposing party, had to be inconsistent with a position that the declaring party took at trial. In *Stepney,* however, we clarified our prior cases and held that admissions of a party are admissible against the party without restric-

tion. Id., 251; see also *State* v. *Rosado,* 218 Conn. 239, 250–51, 588 A.2d 1066 (1991) (reaffirming our holding in *State* v. *Stepney*). The trial court in this case, nonetheless, instructed the jury on the use of the defendant's admissions as if the inconsistency requirement still existed.

We disagree with the defendant's contention, however, that the jury instruction had the effect of reducing the state's burden of proof by allowing the jury to consider certain facts as proven based on their disbelief of the defendant's testimony. The trial court's final charge to the jury occupies forty-four pages of transcript; the disputed portion of the charge constitutes only one paragraph appearing on the seventeenth page of the charge. The trial court carefully and correctly charged the jury on the state's burden of proof beyond a reasonable doubt, on the presumption of innocence and that it could not draw an unfavorable inference from the defendant's failure to testify. Considering the jury charge as a whole, we conclude that there was no reasonable possibility that the charge misled the jury.

## II

The defendant presents eight additional claims. The majority of these represent challenges to evidentiary rulings lying within the trial court's discretion. The defendant also argues that the trial court erred in refusing to strike certain jurors who had allegedly been tainted by comments adverse to the defendant and, further, that particular remarks of the prosecutor during closing arguments deprived him of due process and his right to a fair trial.

### A

The defendant first argues that the trial court impermissibly restricted the cross-examination of a primary state's witness, Rocco Testa. Testa testified, under a

grant of full immunity, to the following. He and the defendant had agreed to commit the Thompson burglary. The defendant gave Testa gloves, a hat and a flashlight, while the defendant himself had gloves, a pry bar and a gun. Holcomb arrived at the Thompson residence during the course of the burglary and Testa escaped through a window. As Testa fled the premises, he heard a single gunshot.

The record reveals that the trial court allowed the defendant to conduct ample cross-examination designed to impeach Testa. The jury was aware that Testa was testifying under a grant of immunity, that he had committed a number of burglaries and that he had been convicted of a series of felonies in prior years. Nonetheless, the defendant sought to have the state disclose a record of the witness' prior misdemeanors as well, to be used to impeach the witness further. The defendant also sought to introduce testimony to rebut Testa's statements that he had not implicated a third party to protect himself in prior criminal prosecutions. The trial court denied both of these requests.

The cross-examination that the trial court allowed was sufficient to satisfy the defendant's constitutional right to confrontation under the sixth amendment to the federal constitution. See *State* v. *Milner*, 206 Conn. 512, 524–25, 539 A.2d 80 (1988). Having satisfied that right, the trial court retained the discretion reasonably to limit the defendant's further efforts to introduce the excluded records and testimony. Id., 525; *State* v. *Thompson*, 191 Conn. 146, 147–48, 463 A.2d 611 (1983). Because the additional evidence in question would have been cumulative of the considerable body of evidence already used to impeach Testa, the trial court did not abuse its discretion in excluding the misdemeanor and third party evidence.

### B

The defendant next argues that the trial court should not have admitted evidence of the defendant's involvement with the Crispino and Fennessey burglaries. He contends that the prejudicial effect of the evidence outweighed its probative value. The state counters that this evidence was admissible for the purpose of identifying the defendant as the party responsible for shooting Holcomb. We agree with the state.

Without question, the evidence of the Crispino and Fennessey burglaries was relevant to the issue of establishing the identity of the defendant as the party responsible for Holcomb's death. It was incumbent upon the trial court, however, to balance the probative value of this evidence against its prejudicial effect. *State* v. *Braman,* 191 Conn. 670, 676–77, 469 A.2d 760 (1983). " 'Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . .' " (Citations omitted.) Id.

The record discloses that a bank bag containing coins and jewelry taken during the Crispino burglary had been left at the Fennessey home following a burglary of that residence. Additional evidence indicated that entry to the Fennessey home had been gained through use of a pry bar similar to that found near Holcomb's body and that a gun stolen from the Fennessey home was the same gun that had been used to shoot Holcomb. This evidence tended to identify the party responsible for the Crispino and Fennessey burglaries as the party also responsible for the Thompson burglary and Holcomb's death.

The trial court heard extensive argument by prosecution and defense counsel on the admissibility of the

Crispino and Fennessey burglary evidence and ultimately found that the evidence was more probative of identity than prejudicial. The court also specifically instructed the jury that it could not consider this evidence to show that the defendant had a propensity for misconduct or bad character. On this record, we conclude that the trial court did not abuse its discretion in admitting the Crispino and Fennessey burglary evidence.

## C

The defendant next argues that the trial court erred in allowing arguably graphic testimony about the emergency medical treatment that Holcomb received after having been shot. The defendant asserts that the testimony was irrelevant and that its prejudicial effect outweighed its probative value. The state disputes this claim, arguing that the testimony was properly admitted. We agree with the defendant that the medical treatment testimony was irrelevant. We conclude, however, that its admission was harmless.

The facts relevant to this claim are as follows. Leonard Kemler, a thoracic and cardiovascular surgeon, rendered emergency treatment to Holcomb at the New Britain General Hospital where he was brought after having been shot. Kemler testified that when Holcomb was brought into the emergency room, he was unconscious and was "gasping for breath, and they were very obviously agonal, terminal breathings." Holcomb had been hooked up to an electrocardiogram to monitor his heartbeat, catheters had been inserted into his veins to give him fluids and blood and an incision had been made in his chest into which the doctor had inserted his hand to massage Holcomb's heart. Kemler testified further that he had made three incisions in the body: "one on the right side, in the right chest to insert a chest tube; one in the left chest to

insert a chest tube; and one just under the nipple to get my hand in to massage the heart."

The trial court ruled that this testimony was relevant to prove that the gunshots had been intended to cause death and had been the proximate cause of death. The defendant argues that, while testimony about the nature of the wounds themselves might have been relevant to show intent to cause death, the specific testimony about the emergency medical treatment was irrelevant to that issue. We agree. The medical treatment testimony itself shed little, if any, light on the cause of death and on whether the nature of the wounds disclosed any indication that they had been intentionally inflicted. Thus, although the trial court had considerable latitude to determine the relevancy of the testimony; see State v. Milner, supra, 518; we conclude that the court exceeded the bounds of its discretion in this case. Our conclusion, however, is based on grounds of relevancy and not undue prejudice. We recognize that medical testimony, by its very nature, may necessarily be graphic. Its graphic nature does not render such testimony inadmissible per se, provided, however, that it is relevant to an element in the case.

Because the admission of the medical treatment testimony constituted an improper evidentiary ruling, and not a constitutional error, the defendant bears the burden of establishing that the admission of the testimony was harmful. State v. Gold, 180 Conn. 619, 640, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). The defendant has not met that burden. The doctor's testimony was limited in length and the objectionable statements comprised only a minor portion of that testimony. Members of the jury had also been screened during voir dire as to their possible reactions to graphic testimony. Moreover, photographs of Holcomb, depicting the gunshot wounds

and the sutured incisions resulting from the medical treatment administered at the hospital, were admitted into evidence and viewed by the jury. In light of these facts, we cannot say that the improper testimony more probably than not affected the result. See *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988), and cases cited therein.

## D

The defendant contends that the trial court erred in refusing to conduct an in camera inspection of the psychiatric records of state's witness Clyde Dick. This error allegedly impaired the defendant's ability to cross-examine the witness effectively and to impeach his credibility. The state counters that the defendant failed to make the necessary showing under our decisions in *State* v. *Bruno,* 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), and *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), cert. denied sub nom. *Pierson* v. *Connecticut,* 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989), before the court could be required to examine the records in question. We agree with the state.

Pursuant to our decisions in *Bruno* and *Esposito,* a defendant seeking access to privileged records that he believes contain information that would allow him to impeach a witness' ability to "comprehend, know or correctly relate the truth," must make a preliminary showing that " 'there is a reasonable ground to believe' that the failure to produce the records would likely impair his right to impeach the witness." *State* v. *D'Ambrosio,* 212 Conn. 50, 58, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

The record indicates that the trial court granted the defendant considerable latitude in questioning the wit-

ness to make a preliminary showing for the disclosure of the psychiatric records. The witness testified that he had sought treatment for alcohol and drug abuse in 1985. He also admitted to having become intoxicated on a number of occasions between November, 1977, and February, 1980. The witness could not recall whether he had abused drugs during that time period. The defendant then asked the witness whether he might have indicated the nature and extent of any drug problem during that time period to the persons treating him in 1985. The state objected to this question as irrelevant and the trial court sustained the objection.

The trial court expressly found that the evidence was insufficient to establish impairment of the witness' ability to recollect or correctly relate the truth. See *State* v. *Esposito,* supra, 180. This finding was appropriate despite the trial court's ruling sustaining the state's objection to the aforementioned question. Because the defendant had failed to make the preliminary showing necessary to disclosure of the witness' psychiatric records, and because the witness withheld consent to an in camera inspection of those records, the trial court properly denied the defendant's motion to disclose.

E

The defendant challenges the trial court's charge to the jury on the law of circumstantial evidence. He contends, relying on our decision in *State* v. *McDonough,* 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988), that the court should have instructed the jury that before an inference can be drawn from a basic fact, that fact must first have been proven beyond a reasonable doubt. We disagree.

In its final charge, the trial court instructed the jury that it could draw reasonable inferences from facts that

the jury found to be admitted or proved as it determined to be logical and reasonable. The court did not instruct the jury that the facts from which inferences might be drawn had to be proven beyond a reasonable doubt. This charge was consistent with our discussion of the law of circumstantial evidence in *McDonough*. We stated therein that "[w]here a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt." Id., 355.

Because the defendant's requested charge would have required that *all* basic facts from which inferences might be drawn had to be proven beyond a reasonable doubt, and not solely those individual facts essential to proof of an element of the state's case, the requested charge was legally incorrect. The trial court, therefore, properly refused the defendant's request.

## F

The defendant next argues that particular comments that the prosecutor made during his rebuttal argument deprived him of due process and his right to a fair trial. Because the defendant failed to object to the majority of the challenged remarks, he seeks review under *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State v. Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Our review of the record discloses that the remarks now challenged represented isolated instances of alleged misconduct, unrepresentative of a pattern of conduct repeated throughout the trial. We therefore decline to

review their propriety. See *State* v. *Williams,* 204 Conn. 523, 537, 529 A.2d 653 (1987).

For two of the challenged remarks, however, the defendant moved for a mistrial following the completion of the prosecutor's rebuttal argument. The trial court denied that motion. Because these claims were properly preserved, we review them. *State* v. *Tyler-Barcomb,* 197 Conn. 666, 673, 500 A.2d 1324, cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986). The focus of our review is on the prosecutor's comments viewed in the context of the entire trial, not on the culpability of the prosecutor. *State* v. *Northrop,* 213 Conn. 405, 421, 568 A.2d 439 (1990). Moreover, we will not disturb the trial court's mistrial ruling unless the challenged remarks have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden* v. *Wainwright,* 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986).

During his rebuttal argument the prosecutor responded to remarks that defense counsel had earlier made in his closing argument. In those remarks, defense counsel discounted the importance of a piece of glass found on the defendant's clothing that matched broken glass at the Thompson residence. The prosecutor stated, "[b]ut the defense was very particular about putting glass particles before you, certain glass particles that came off the defendant's shoes that did not match. And Mr. Kelly's response now is, glass particles, what do we know about that. And why? Because now there is evidence before you that pants seized from the defendant's girl friend while she was doing laundry in his apartment contained glass particles which matched the glass in the rear door, the point of entry in the Thompson home. Mr. Kelly waves that away with a toss of the head and a wave of the hand. It can't be

done, ladies and gentlemen. That evidence was not before you in the state's case in chief because of the Fourth Amendment." The defense objected and the trial court sustained the objection.

The prosecutor also stated that "a gun cleaning kit was seen in [the defendant's] possession. How did this get into the lake? Did Rocco Testa have it? The defendant never said he gave it to him." This statement was apparently offered to rebut an argument that Testa had falsely implicated the defendant by placing incriminating evidence in the lake in question.

At the close of the prosecutor's rebuttal, the defendant moved for a mistrial based on the aforementioned statements. He argued that the first statement unfairly suggested to the jury that the defense had used the fourth amendment as a trick to attempt to hide incriminating evidence from the jury. The defendant also argued that the portion of his prior direct testimony that the court had excluded from evidence contained a statement that could have covered the gun cleaning kit. The trial court, however, expressly found that the prosecutor's remarks were insufficiently prejudicial to warrant a mistrial and, therefore, denied the defendant's motion. The court further indicated that it had instructed the jury on the matters forming the basis of the motion, and that it intended to instruct the jury again on those matters in its final charge.

We are unpersuaded that the trial court's ruling on the defendant's motion for a mistrial was improper. As stated earlier, the challenged remarks represented isolated instances of alleged misconduct, not individual strands in a web of prosecutorial impropriety that blanketed the entire trial. Significantly, the trial court sustained the defendant's contemporaneous objection to the fourth amendment comment. Furthermore, the

trial court gave the jury curative instructions regarding the challenged statements. There is no indication that the portion of the defendant's prior direct examination testimony, which had been excluded from evidence by the trial court, contained any statement relevant to the second ground supporting the defendant's motion for a mistrial. On this record, we conclude that the challenged remarks did not infect the entire trial so as to have denied the defendant due process.

## G

The defendant next claims that he was deprived of his right to an impartial jury because the trial court failed to strike certain seated jurors and members of the jury venire who may have overheard derogatory remarks about the defendant during the jury selection process. The record reveals that after a number of jurors had already been seated, an unidentified member of the venire, while in the company of the venire, stated, in effect, that the defendant was an "SOB" and that "they ought to hang him." The trial court, upon becoming aware of this remark, proceeded to question all of the venirepersons who might have overheard the remark, most of whom responded that they had not heard the comment. Counsel for the defendant was also afforded the opportunity, without any apparent limitation, to question venirepersons. The trial court concluded that those persons who had heard the remark had not been affected by it. Significantly, the court dismissed the juror that it determined had been the source of the derogatory comments regarding the defendant. Upon the completion of the jury voir dire, the court thereupon denied the defendant's motion to strike the jury panel.

A trial court's determination that particular individuals are competent to serve as jurors will not be disturbed absent a showing of abuse of discretion. *State*

v. *Cubano,* 203 Conn. 81, 88–89, 523 A.2d 495 (1987). Despite the defendant's protestations to the contrary, the record does not support the defendant's claim. We cannot say that the court abused its discretion in refusing to strike the jury panel.

## H

The defendant's final argument is that the trial court improperly allowed a state's witness to testify about a conversation that the witness had had with the defendant prior to the Thompson burglary. The witness, Allen Carder, an acquaintance of the defendant, testified that a few days prior to the Thompson burglary, he and the defendant had had a conversation in a local bar, during which the defendant had asked the witness if he were interested in participating in a burglary that the defendant intended to commit on either Monday, Tuesday or Wednesday of the week of November 21, 1977. The defendant further stated during this conversation that he had the tools, including masks, pry bars, gloves and flashlights, for committing the burglary and that the time for the burglary would be between 5 p.m. and 8 p.m.[4]

The defendant argues that the testimony was introduced as evidence of the defendant's bad character and that the testimony's prejudicial effect outweighed its probative value. The trial court concluded that the witness' statements were probative of the defendant's intent to commit a burglary on one of the days that the witness mentioned. The trial court also concluded that the statements corroborated other evidence tending to identify the defendant as the party responsible for the Thompson burglary and Holcomb's death.

The defendant's statements regarding the date, time and tools to be used in committing a burglary were

[4] The record discloses that Holcomb was shot at approximately 5:30 p.m. on Monday, November 21, 1977.

512

admissible as statements of a party opponent, and were probative of the defendant's intent to commit the Thompson burglary. See *State* v. *Santangelo,* 205 Conn. 578, 592, 534 A.2d 1175 (1987); *State* v. *McDowell,* 179 Conn. 121, 124, 425 A.2d 935 (1979). The trial court also instructed the jury in its final charge that evidence of past criminal activity of the defendant was not to be used to find that the defendant had a propensity for criminal activity. We conclude that the trial court properly admitted the testimony of Allen Carder.

### III

The state concedes that the disposition of its appeal is controlled by this court's decision in *State* v. *Chicano,* 216 Conn. 699, 584 A.2d 425 (1990). Because we decline to reconsider our holding therein, we conclude that the trial court properly vacated the defendant's conviction for felony murder under the second count of the state's indictment.

The judgment is affirmed.

In this opinion the other justices concurred.