## STATE OF CONNECTICUT *v.* JERMAINE WOODS
### (SC 17818)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 15—officially released July 27, 2010

*Suzanne Z. Curtis*, former assistant public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *John Connelly*, state's attorney, and *Cara F. Eschuk*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Jermaine Woods, was convicted, after a trial before a three judge court, *Cremins, O'Keefe* and *Eveleigh, Js.*, of murder in violation of General Statutes § 53a-54a (a). The defendant appeals[1] from the judgment of conviction claiming that: (1) the trial court improperly admitted the defendant's testimony from a previous trial because that testimony was not voluntary; and (2) the defendant's waiver of his right to a jury trial was not valid. We reject these

---

[1] The defendant appeals directly to this court from the judgment of the trial court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

claims and, accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. The defendant was charged with murder in violation of § 53a-54a (a) for the fatal shooting of Jamal Hall on November 5, 1994, in Waterbury. The matter was tried to a jury in December, 1996 (first trial), but the jury was unable to reach a verdict. Following a retrial beginning in January, 1997 (second trial), the defendant was convicted of murder and sentenced to fifty years incarceration. The defendant appealed from this conviction to this court, which affirmed the judgment. See *State* v. *Woods*, 250 Conn. 807, 740 A.2d 371 (1999).

The defendant then filed a petition for a writ of habeas corpus, claiming ineffective assistance of trial counsel at the second trial, specifically, that his trial counsel failed to adequately prepare a diminished mental capacity defense. The habeas court granted the defendant's petition and ordered a new trial. The Appellate Court subsequently affirmed the judgment of the habeas court. See *Woods* v. *Commissioner of Correction*, 85 Conn. App. 544, 545, 757 A.2d 986, cert. denied, 272 Conn. 903, 863 A.2d 696 (2004).

Thereafter, the defendant elected to be tried by a three judge court. Following the trial in June, 2006 (third trial), the defendant was convicted of murder and sentenced to fifty years incarceration. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the defendant first claims that the trial court improperly admitted his testimony from his second trial at his third trial because that testimony had not been given voluntarily. Specifically, the defendant asserts that, because the transcript from the second

trial does not reveal a canvass by the court or any statement by defense counsel demonstrating that the defendant understood his right not to testify and the consequences of testifying, the defendant's testimony was not voluntary and was, therefore, improperly admitted at the third trial. In response, the state asserts that the trial court properly admitted the defendant's testimony from the second trial for two reasons. First, the state claims that there is no requirement that the trial court canvass a defendant before he takes the stand and testifies. Second, the state claims that the defendant has not rebutted the presumption that his counsel would have ensured that his decision to testify was knowing, intelligent and voluntary, and that the record establishes that the defendant's decision to testify was knowing, intelligent and voluntary. We agree with the state that the trial court properly admitted the defendant's prior testimony at the third trial.[2]

The following additional facts are necessary to the resolution of the defendant's first claim. Prior to the third trial, the state filed a notice of intent to introduce the defendant's testimony from the second trial during its case-in-chief at the third trial. During discussion of the state's request prior to the presentation of evidence, defense counsel acknowledged that prior testimony was generally admissible, but asserted that the trial court should exclude the testimony if there was no evidence in the record to demonstrate that the testimony was voluntary. Specifically, the defendant asserted that his prior testimony would be inadmissible if the record did not demonstrate that he had been properly advised and that proper safeguards had been

---

[2] The state also asserts, in the alternative, that even if the trial court improperly admitted the defendant's prior testimony from the second trial, any such impropriety was harmless. Because we conclude that the trial court properly admitted the defendant's prior testimony from the second trial, we do not reach the state's claim of harmlessness.

in place to ensure that his constitutional privilege against self-incrimination had been protected.

The state responded that although the transcript of the second trial did not contain a canvass of the defendant with regard to his decision to testify, the defendant had been represented by counsel, which gives rise to a presumption that the defendant's testimony had been voluntary. The state also pointed out that, although the defendant later brought a successful habeas corpus action based on ineffective assistance of counsel during his second trial, that claim had been based only on his counsel at the second trial not properly pursuing a diminished mental capacity defense and that the defendant never claimed during the habeas proceeding that his attorney at the second trial had been ineffective in permitting or encouraging the defendant to testify at the second trial. Furthermore, the state also asserted that the defendant had been represented by a second attorney at the second trial and that there had been evidence presented at the habeas trial that the defendant had spoken with this other attorney regarding whether he should testify at the second trial.

Thereafter, having reviewed the record from both the second trial and the habeas trial, the trial court granted the state's request to introduce the defendant's prior testimony at the second trial during its case-in-chief. The state then admitted into evidence the defendant's prior testimony in its entirety at the third trial. The defendant subsequently testified at his third trial, after a full canvass by the court.

As a preliminary matter, we identify the legal principles and the applicable standard of review that governs our examination of the defendant's claim. "In *Harrison* v. *United States*, 392 U.S. 219, 222, 88 S. Ct. 2008, 20 L. Ed. 2d 1047 (1968), the United States Supreme Court recognized the 'general evidentiary rule that a defen-

dant's testimony at a former trial is admissible in evidence against him in later proceedings.' A considerable body of federal and state decisional law supports that rule. See, e.g., *United States* v. *Mortensen*, 860 F.2d 948, 951 (9th Cir. 1988); *United States* v. *Nell*, 570 F.2d 1251, 1259 (5th Cir. 1978); *Edmonds* v. *United States*, 273 F.2d 108, 112–13 (D.C. Cir. 1959); *Bloodsworth* v. *State*, 76 Md. App. 23, 34, 543 A.2d 382 (1988); see also annot., 5 A.L.R.2d 1406, 1411 (1949). These cases establish that, unless a defendant's prior testimony was involuntary or compelled in a constitutional sense, the use of that testimony against the defendant in a subsequent trial does not violate his privilege against self-incrimination under the fifth and fourteenth amendments to the federal constitution." *State* v. *Castonguay*, 218 Conn. 486, 491, 590 A.2d 901 (1991).

Our standard of review for evidentiary claims is well settled. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the [law], our standard of review is plenary." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007); id. ("[f]or example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review"). "We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." Id. Because the defendant challenges the trial court's conclusion that the defendant's decision to testify at the second trial was a knowing, intelligent and voluntary waiver of his privilege against self-incrimination under the fifth and fourteenth amendments to the federal constitution, our review is plenary.

In *State* v. *Castonguay*, supra, 218 Conn. 491–92 n.2, this court concluded that, "[i]n allowing the defendant to take the stand, the trial court implicitly found that the defendant had knowingly and intelligently waived

his privilege against self-incrimination. Because a criminal defendant's decision to testify is often strategic or tactical, and is made only after serious consultation with counsel about the advantages and disadvantages thereof, it is one we are disinclined to second guess. . . . We can only assume, without more than a bare assertion to the contrary, that counsel provided the defendant with the information necessary to make an informed decision whether to testify." (Citation omitted.)

In the present case, the defendant was represented by counsel at his second trial. Accordingly, consistent with *Castonguay*, we assume that his counsel provided the defendant with the information necessary to make an informed decision whether to testify at his second trial. The defendant attempts to distinguish this case from *Castonguay* by asserting that it is improper to assume that defense counsel in his second trial properly counseled the defendant about the decision to testify because the defendant brought a successful habeas corpus action for ineffective assistance of counsel based on his counsel's representation of him at his second trial. Our review of the record of the defendant's habeas trial indicates, however, that the defendant never raised any claim that defense counsel failed to counsel him properly regarding his decision to testify at the second trial or that he was pressured to testify by his attorney. Instead, the defendant challenged his defense counsel's representation only for her failure to pursue a defense of diminished mental capacity. See *Woods* v. *Commissioner of Correction*, supra, 85 Conn. App. 546.

Moreover, the defendant was represented by two attorneys at his second trial. The defendant's habeas corpus action related to his representation by only one of these attorneys and our review of the record from the defendant's habeas trial reveals that the defendant spoke with both of his attorneys at the second trial

about whether he should testify and that they both prepared him to testify. On the basis of these facts, the defendant's subsequent filing of a habeas corpus petition does not defeat the presumption permitted by *Castonguay* that a defendant who is represented by counsel has been provided with the information necessary to make an informed decision about whether to testify at trial.

Furthermore, the record in the present case reveals that the defendant was also counseled regarding his right against self-incrimination and his right to testify at his first trial. During the trial court's canvass of the defendant in the first trial, the defendant informed the trial court that his attorneys had discussed his right to testify with him and that he had decided not to testify. Thus, the record clearly reveals the defendant's admission that he was advised by his first counsel concerning these rights.

Accordingly, we conclude that the trial court in the present case properly determined that the defendant's testimony in the second trial was knowing, intelligent and voluntary, and, therefore, was admissible in the defendant's third trial.

II

The defendant next claims that the trial court improperly concluded that he had knowingly, intelligently and voluntarily waived his right to a jury trial. Specifically, the defendant asserts that because there was evidence before the trial court that he had a diminished mental capacity and, further, that he was misinformed by the trial court concerning his waiver of his right to a jury trial, the trial court improperly concluded that he validly had waived his right to a jury trial with regard to his third trial. We disagree.

The defendant concedes that these claims were not raised at trial and requests that we review them under

*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine, which is codified at Practice Book § 60-5.[3] Under *Golding*, the defendant can prevail on a claim only if all the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. We conclude that the defendant's claim that the trial court improperly determined that he validly waived his right to a jury trial is reviewable under *Golding* because the record is adequate for review and the defendant's claim is one of constitutional magnitude alleging the violation of a fundamental right. *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); see *State* v. *Gore*, 288 Conn. 770, 775–76, 955 A.2d 1 (2008) ("[t]he right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence"). We, therefore, will review the merits of the defendant's claim.

The following additional facts are necessary to our resolution of this issue. Prior to the beginning of the third trial, the defendant appeared with counsel before the trial court, *Cremins, J.*, for jury selection. He entered a plea of not guilty to the substitute information charging him with murder in violation of § 53a-54a. Judge Cremins then asked the defendant whether he elected to have a trial by a jury or a trial to the court.

---

[3] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

The defendant responded that he had not spoken with his attorney in months and wanted to file more motions. Judge Cremins then recessed court to allow the defendant to discuss with defense counsel whether he should elect a court or a jury trial. When court reconvened, defense counsel informed Judge Cremins that the defendant had elected a court trial. Judge Cremins then referred the matter to another trial court, *Iannotti, J.*

Later that same day, the defendant appeared with counsel before Judge Iannotti for a canvass of the defendant's decision to waive his right to a jury trial. The following colloquy occurred between Judge Iannotti and the defendant:

"The Court: . . . It's come to my attention from your lawyer that you wish to change your [trial] election. What I mean by that is your case had been upstairs in front of Judge Cremins to commence jury selection on your murder case. Correct?

"[The Defendant]: Yes. . . .

"The Court: . . . This would have been the third trial, in fact, on this case. Is that also correct?

"[The Defendant]: Yes.

"The Court: All right. And my understanding is on the prior two cases that you had elected a jury trial. Is that right?

"[The Defendant]: Yes.

"The Court: All right. And you've now had some in-depth discussions with [defense counsel] and the two of you have come to a decision that you wish to now have a court trial in front of a three judge panel on your murder case. Am I accurate so far . . . ?

"[The Defendant]: Yes.

"The Court: Okay. Now have you had enough time to talk to [defense counsel] about that issue?

"[The Defendant]: Not really, but, you know . . . .

"The Court: Okay. That's not a problem. Do you need some additional time? Do you want [me] to . . . send you back downstairs with [defense counsel] and talk about it a little bit further before—

"[The Defendant]: Oh, no, no.

"The Court: Well, this is a big decision . . . and I don't want you to make this decision—and I'm going to tell you why in a second—I don't want you to make this decision until you're able to tell me—you're able to say, 'Hey, Judge, I've talked to [defense counsel] about this for a long time and I'm positive this is the decision that I want to make.' Until I hear that from you, I'm not prepared to accept it, if you understand what I'm saying. And here's why: because once you change your mind and you tell me, 'Judge, I'm sure I want a three judge panel instead of a jury trial,' and I accept that from you, you can never change your mind and go back and say to [defense counsel], 'you know . . . I've changed my mind, I really want to have a jury trial like I did the other times.' You can't do it.

"Once I say okay to you about your three judge panel, you can't go back again. You could always—you can go from—once you have a jury trial, you can have a jury trial; but once you say 'I don't want a jury trial anymore, I want a court trial,' you can't go back again. Are you following me so far?

"[The Defendant]: Yes. . . .

"The Court: . . . So you understand then why this is a very big decision, right?

"[The Defendant]: Yes.

"The Court: Because once you make it, I'm not going to have you come back tomorrow and say, 'Judge, I've changed my mind.' I'm going to say . . . 'I'm sorry. You can't change your mind. I told you that yesterday.'

"So, let's do this, okay—I know you've been talking to [defense counsel] a lot. I know he's met with you many times—Correct, [addressing defense counsel]?

"[Defense Counsel]: Yes, Your Honor.

"The Court: So . . . what's the big deal a couple of more minutes, another half hour; not going to make a difference. Go talk to him a little bit more so, if you come back here again, you can tell me that whichever decision you make, to have a jury or a three judge panel, you're sure about it. I just want to be absolutely sure. Okay?

"[The Defendant]: I'm sure. I didn't know what you were saying at first. I'm sure, a three judge [panel]. . . .

"The Court: Okay. Well, I had said to you, 'Have you had enough time about changing your mind to a three judge panel? Have you had enough time to speak with [defense counsel]?' And you said, 'Not really.' Did you not hear me?

"[The Defendant]: No, I thought you . . . . I misunderstood . . . .

"The Court: . . . So, I'll ask you again. It appears that you didn't hear my question the first time: Are you sure that you have had enough time to speak to [defense counsel] about changing your mind from having a jury trial on your murder case to having a three judge panel?

"[The Defendant]: Yes.

"The Court: You're positive?

"[The Defendant]: Yes.

"The Court: And you've had time to speak to [defense counsel]?

"[The Defendant]: Yes.

"The Court: And he spoke to you about all the issues and possibilities that could happen, right?

"[The Defendant]: Yes.

"The Court: And you understand what I said to you, that once you do change your mind and I accept this, that you can't go back to a jury trial again. You understand that?

"[The Defendant]: Yes.

"The Court: And no way that you can [ever] have a jury trial again on this—if you had another trial, you could—but on this trial you can never have a jury trial again. It would have to be a three judge panel. You are absolutely sure that that's the decision that you want to make?

"[The Defendant]: Yes. . . .

"The Court: . . . When you have a jury trial, all right, the judge who sits on the case is called—he makes the decisions on the law. The jury makes the decisions on the facts. They listen to the evidence and they decide where the truth lies, so to speak. Okay? In other words, the judge is the judge of the law; the jury is the judge of the facts.

"Once you elect a three judge panel, those three judges [that will] sit up here are the sole deciders of both the law and the facts. Okay?

"So, in other words, they will listen to the witnesses in the case—you included, if you decide to testify— and they will decide what the law is and they will decide what facts—[they will]—put it this way: [they will] listen to the witnesses and decide the credibility of the wit-

nesses—who to believe, how much to believe, if to believe, right.

"And that's—I understand . . . that's what you want, right, you want a three judge panel to make the decision?

"[The Defendant]: Yes.

"The Court: And you're sure of that?

"[The Defendant]: Yes."

We begin our analysis of this claim by setting forth the applicable standard of review. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, [supra, 304 U.S. 464], we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused. . . . In examining the record, moreover, we will indulge

every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Citations omitted; internal quotation marks omitted.) *State* v. *Gore*, supra, 288 Conn. 775–77.

In *Gore*, we addressed the requirements for a knowing, intelligent and voluntary waiver of the right to a trial by jury and held that, in determining whether a court has properly accepted a waiver of the right, "there must be some affirmative indication from the accused personally, on the record, that he or she has decided to waive the fundamental right to a jury trial because the defendant's silence is *too* ambiguous *to* permit the inference that he or she has waived such a fundamental right. . . . A defendant's personal assertion of a waiver of the right to a jury trial is not conclusive evidence that the waiver was made knowingly, intelligently and voluntarily, but its absence is a fatal blow to the validity of a waiver." (Citations omitted.) Id., 781–82.

In the present case, it is undisputed that the threshold requirement was satisfied in that the defendant addressed the court personally and stated on the record that he had decided to proceed to trial before a three judge court, and not before a jury. We therefore next must examine the totality of the circumstances, including the statements made by the defendant to the court, to determine if the defendant's waiver was knowingly, intelligently and voluntarily made and, thus, was properly accepted by the court.

The defendant asserts that the trial court improperly concluded that he validly had waived his right to a jury trial because there was evidence presented that the defendant suffered from a diminished mental capacity. We disagree. "It is undisputed that an accused who is

competent to stand trial also is competent to waive constitutional rights. See, e.g., *Godinez* v. *Moran*, 509 U.S. 389, 398–99, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). Thus, any criminal defendant who has been found competent to stand trial, ipso facto, is competent to waive the right to [a jury trial] as a matter of federal constitutional law. *State* v. *Day*, 233 Conn. 813, 824, 661 A.2d 539 (1995). . . .

"The determination of whether a defendant is competent to waive his right to a jury trial, however, is only the first of two steps necessary to determine whether the relinquishment of that right is constitutionally valid. In addition to determining that a defendant who seeks to [waive a constitutional right] is competent, a trial court must satisfy itself that the waiver . . . is knowing and voluntary. . . . [I]n this sense, there is a heightened standard for [the waiver of a constitutional right], but it is not a heightened standard of competence. . . . Moreover, it is the same standard that is applicable to all criminal defendants who have been found competent to stand trial. Under this standard, [t]he determination of whether there has been an intelligent waiver of [a constitutional right] must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 752–54, 859 A.2d 907 (2004).

Our review of the totality of the circumstances in the present case demonstrates that the defendant's waiver of his right to a jury trial was knowing, intelligent and voluntary. First, his competence to stand trial was never called into question in any of his three trials. Because the defendant was competent to stand trial, he also was competent to waive his right to a jury trial. Id., 752–53. Second, the defendant was represented throughout the third trial and during pretrial proceedings by defense

counsel, Errol Skyers. The fact that the defendant was represented by counsel and that he conferred with counsel concerning waiver of his right to a jury trial supports a conclusion that his waiver was constitutionally sound. See, id., 756–57; *State* v. *Marino*, 190 Conn. 639, 645, 462 A.2d 1021 (1983) ("[i]t is not unreasonable to infer such a waiver from the free expression by a defendant of his election of a non-jury trial especially where he is represented by counsel"). Third, although the defendant did raise an affirmative defense of mental disease or defect under § 53a-54a (b), the panel of trial court judges who heard the testimony offered in support of that defense, rejected it, and the defendant has not challenged that ruling on appeal.

Next, when canvassed by Judge Iannotti with regard to his waiver of his right to a jury trial, the defendant's statements were appropriate and demonstrated that he understood his rights and the court's questions. During his colloquy with Judge Iannotti, the defendant confirmed that he wished to be tried by a three judge court, that he had spoken with defense counsel to discuss this decision, and had an adequate opportunity to do so, that defense counsel had spoken with him about all the issues and possibilities associated with his decision, and that he was sure of his decision to be tried by a three judge court. Defense counsel also confirmed all of these statements and further stated that, as the defendant's attorney, he was comfortable that it was the defendant's decision to waive his right to a jury trial. Upon a request by defense counsel, Judge Iannotti further clarified for the defendant that during a court trial, the three judges would act as the fact finders and make all decisions related to both the law and the facts. The defendant acknowledged that he understood the role of the judges that would sit on the three judge court and once again confirmed that it was his decision to be tried by a three judge court. On the basis of our

review of all of these circumstances, we conclude that the trial court properly determined that the defendant knowingly, intelligently and voluntarily waived his right to a jury trial.

The defendant also claims that the trial court improperly concluded that he had validly waived his right to a jury trial because his waiver was based on misinformation from the trial court. Specifically, the defendant asserts that the trial court violated General Statutes § 54-82b (b)[4] by informing the defendant that once the court accepted his waiver of a jury trial after the canvass, he would not be able to change his mind and return to his original decision to have a jury trial and that such a violation of § 54-82b (b) vitiates his waiver of his right to a jury trial. We disagree.

In the present case, during the canvass of the defendant regarding his waiver of his right to a jury trial, the trial court informed the defendant as follows: "[O]nce you change your mind and you tell me, 'Judge, I'm sure I want a three judge panel instead of a jury trial,' and I accept that from you, you can never change your mind and go back and say to [defense counsel], 'you know . . . I've changed my mind, I really want to have a jury trial like I did the other times.' You can't do it. Once I say okay to you about your three judge panel, you can't go back again. . . . [O]nce you say 'I don't want a jury trial anymore, I want a court trial,' you can't go back again. Are you following me so far?" The defendant responded in the affirmative.

---

[4] General Statutes § 54-82b (b) provides: "In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial."

As we have explained previously herein, "a valid waiver of a constitutional right [is] the intentional relinquishment or abandonment of a known right. . . . When such a claim is first raised on appeal, our focus is on compliance with . . . constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book." (Internal quotation marks omitted.) *State* v. *Gore*, supra, 288 Conn. 776.

Having concluded previously herein that the defendant knowingly, intelligently and voluntarily waived his right to a jury trial, we disagree with the defendant that the trial court's statements regarding whether he could change his mind and elect a jury trial made his waiver invalid for two reasons. First, the trial court's statements were not inconsistent with § 54-82b (b). During the colloquy, the trial court informed the defendant that he could not simply change his mind about his decision to elect a trial to the court, which is consistent with § 54-82b (b). Indeed, this court repeatedly has held that there is no right to change an election of a trial to the court after a plea has been entered. See, e.g., *State* v. *Hinckley*, 198 Conn. 77, 91, 502 A.2d 388 (1985). Instead, § 54-82b (b) allows a court to grant a defendant's motion to withdraw his election only *if* the court finds that the defendant's waiver is invalid because he was not aware of his rights or *if* the court finds that the administration of justice requires the withdrawal of the election. Accordingly, we conclude that the trial court did not misinform the defendant or violate § 54-82b (b).

Second, even if the trial court's statements to the defendant were inconsistent with § 54-82b (b), there is no evidence in the record that demonstrates that the defendant would have made a different decision were it not for this inconsistency. Because the defendant did not raise this claim in the trial court, there is no evidence in the record regarding whether the defendant was dis-

satisfied with his choice of a trial to the court or in fact wished to change his election to a jury trial. In addition, the defendant was represented by counsel during his third trial, and, therefore, we can assume that if the defendant had expressed dissatisfaction with the court trial, defense counsel could have explained his options under § 54-82b (b). Accordingly, even if the trial court's colloquy explaining the consequences of the defendant's decision to him was inconsistent with § 54-82b (b), we conclude that it was harmless and that the trial court properly determined that the defendant validly waived his right to a jury trial.[5]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[5] Alternatively, the defendant claims that the trial court committed plain error. On the basis of our conclusion that the defendant validly waived his right to a jury trial, we conclude that the trial court did not commit plain error in allowing the defendant to be tried before a three judge court. *State* v. *Thomas*, 296 Conn. 375, 394 n.14, 995 A.2d 65 (2010) ("[t]he plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted]).

* The listing of justices reflects their seniority status on this court as of the date of oral argument.