******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KERLYN T.*
(SC 20380)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of, among other crimes, aggravated sexual assault in the first
degree, home invasion, risk of injury to a child and assault in the second
degree with a firearm, the defendant appealed to the Appellate Court,
claiming, inter alia, that his convictions should be reversed because the
trial court incorrectly determined that his jury trial waiver was knowing,
intelligent and voluntary. The Appellate Court affirmed the trial court's
judgments of conviction, specifically rejecting the defendant's claims
that his waiver was constitutionally infirm because he was suffering
from an unspecified mental illness at the time of the waiver and that
trial court's canvass was constitutionally infirm because the court failed
to elicit from him additional information about his background, experi-
ence, conduct, and mental and emotional state, and to explain, among
other things, the mechanics of a jury trial. On the granting of certification,
the defendant appealed to this court, renewing his claim in the Appellate
Court challenging the validity of his jury trial waiver. *Held* that the
Appellate Court having fully addressed the issues raised by the defendant
before this court concerning whether the trial court had correctly deter-
mined that his jury trial waiver was knowing, intelligent and voluntary,
this court adopted the Appellate Court's thorough and well reasoned
opinion as a proper statement of the issues and the applicable law
concerning those issues and, accordingly, affirmed the judgment of the
Appellate Court.

Argued September 18—officially released November 9, 2020**

*Procedural History*

Substitute information, in the first case, charging the
defendant with the crimes of criminal attempt to com-
mit assault in the first degree, intimidating a witness,
strangulation in the second degree, and assault in the
third degree, and substitute information, in the second
case, charging the defendant with three counts of the
crime of threatening in the first degree, and with one
count each of the crimes of aggravated sexual assault
in the first degree, home invasion, risk of injury to a
child, assault in the second degree with a firearm,
assault in the third degree, kidnapping in the first degree
with a firearm, unlawful restraint in the first degree,
criminal possession of a firearm, and criminal violation
of a protective order, brought to the Superior Court in
the judicial district of Danbury, where the cases were
consolidated and tried to the court, *Russo, J.*; thereafter,
the court, *Russo, J.*, granted the defendant's motion for
a judgment of acquittal as to the charge of criminal
attempt to commit assault in the first degree; subse-
quently, verdicts and judgments of guilty of two counts
each of assault in the third degree and threatening in the
first degree, and one count each of aggravated sexual
assault in the first degree, home invasion, risk of injury
to a child, assault in the second degree with a firearm,
and unlawful restraint in the first degree, from which
the defendant appealed to the Appellate Court, *Prescott,*

*Elgo* and *Pellegrino, Js.*, which affirmed the judgments of the trial court, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sharmese Walcott*, executive assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. Following a trial to the court, the defendant, Kerlyn T., was convicted of numerous offenses, including aggravated sexual assault in the first degree, home invasion, risk of injury to a child, and assault in the second degree with a firearm. On appeal to the Appellate Court, the defendant claimed that his convictions should be reversed because the trial court incorrectly determined that his jury trial waiver was knowing, intelligent and voluntary. The Appellate Court disagreed and affirmed the trial court's judgments. *State* v. *Kerlyn T.*, 191 Conn. App. 476, 478–79, 215 A.3d 1248 (2019). We granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court correctly hold that the trial court properly found the defendant's waiver of his right to jury trial was constitutionally valid?" *State* v. *Kerlyn T.*, 333 Conn. 928, 218 A.3d 68 (2019). We answer that question in the affirmative and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On May 26, 2013, the defendant confronted and assaulted the victim. On May 28, 2014, the defendant broke into the victim's Danbury apartment armed with a semiautomatic assault style rifle. Although the victim was not present, the defendant remained in the apartment, concealing himself therein. The victim returned to the apartment later that evening accompanied by her minor child[1] and a coworker. Once inside, they were confronted by the defendant and held at gunpoint . . . for approximately three hours. During that time, the defendant forcefully restrained the victim, bound her to a chair, taped her mouth shut and, thereafter, assaulted her both physically and sexually, while the minor child and the coworker were present in the apartment. [When the child tried to intervene to protect the victim, the defendant shoved him violently against the wall.]

"The defendant was subsequently arrested [and] . . . charged . . . with aggravated sexual assault in the first degree in violation of [General Statutes] § 53a-70a (a) (1), home invasion in violation of [General Statutes] § 53a-100aa (a) (2), risk of injury to a child in violation of [General Statutes] § 53-21 (a) (1), assault in the second degree with a firearm in violation of [General Statutes] § 53a-60a (a), unlawful restraint in the first degree in violation of [General Statutes] § 53a-95 (a), two counts of assault in the third degree in violation of [General Statutes] § 53a-61 (a) (1), three counts of threatening in the first degree in violation of [General Statutes] § 53a-61aa (a) (3), criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), strangulation in the second degree in violation of General Statutes (Rev. to

2013) § 53a-64bb (a), intimidating a witness in violation of General Statutes § 53a-151a, kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), and criminal violation of a protective order in violation of General Statutes (Rev. to 2013) § 53a-223." (Footnote in original; footnote omitted.) *State* v. *Kerlyn T.*, supra, 191 Conn. App. 479–80.

"On January 22, 2015, following the defendant's arrest, Attorney Mark Johnson, a public defender, appeared before the court on behalf of the defendant and requested a formal competency evaluation of the defendant pursuant to General Statutes § 54-56d, on the basis of Attorney Johnson's belief that the defendant was unable to assist in his own defense.[2] During an otherwise brief hearing, the court granted the motion after Attorney Johnson stated that the defendant's state of mind was impairing his ability to prepare a proper defense.

"The competency evaluation was conducted on February 13, 2015, by the Office of Forensic Evaluations [of the Department of Mental Health and Addiction Services], which determined that the defendant, at that time, was not competent to stand trial. It further concluded that there was a 'substantial probability [that the defendant] could be restored to competence within the maximum statutory time frame,' and, therefore, 'recommend[ed] an initial commitment period of sixty days . . . [in] the *least restrictive setting* . . . .' " (Emphasis in original; footnote altered.) Id., 481. "After the court adopted the evaluation, the defendant was admitted to Whiting Forensic Division of Connecticut Valley Hospital (Whiting) for treatment and rehabilitation. On May 7, 2015, the court, *Russo, J.*, adopted the conclusion of a second competency evaluation administered at Whiting on April 23, 2015, that determined that the defendant was competent to stand trial.[3]

"On November 6, 2015, after the defendant rejected the state's offer of a plea agreement, the court notified the defendant that the matter would be placed on the trial list and that jury selection would commence the following month. On February 6, 2016, when the defendant appeared before Judge Russo for jury selection, the defendant requested that the court provide him with more time to consider whether to elect a jury trial or a court trial. The court denied his request.

"At that hearing, defense counsel, Attorney Gerald Klein,[4] was unable to ascertain whether the defendant wanted to elect a jury trial or a court trial and moved for a second § 54-56d competency evaluation due to his belief that the defendant was unable to continue assisting with his own defense. In response, the court engaged the defendant in a lengthy colloquy and permitted him to speak freely about various grievances, which

ranged from his frustrations with the discovery process to an alleged assault that occurred during his confinement at Whiting.

"At the conclusion of the colloquy, the court denied Attorney Klein's request for a second competency evaluation, stating: '[A]fter spending nearly [one and one-half hours] with [the defendant] on a number of topics, [I] cannot justify ordering the examination for a variety of reasons. For one, [the defendant] has presented himself here today, as I have witnessed him in the past, [as] a competent, articulate, [and] to steal a phrase from [Attorney] Klein, [as] a very measured individual, who, at least in my view, certainly understands the nature of the proceedings here in court, certainly understands the function of the personnel that are assembled in this very room, certainly understands the nature of the proceedings against him and the charges that have been alleged against him. . . . I also believe—and I realize that . . . [Attorney] Klein may [disagree] on this point—that [the defendant] does have the ability to assist in his own defense. . . . So, I do not find that the examination at this point in time is justified.' " (Footnote altered; footnote in original.) Id., 481–83.

"The court [then] proceeded to address the issue of whether the defendant would elect a jury or a court trial. Taking into account the defendant's earlier request for more time [in which to make that decision], the court [called a recess to allow] the defendant to meet with Attorney Klein [privately. Before leaving the courtroom, Attorney Klein informed the court that he and the defendant had already discussed the issue at length and that he did not believe that further discussions would be 'fruitful.'] After a forty minute recess, the defendant [returned to the courtroom and] waived his right to a jury trial . . . . Prior to [the defendant's] making that decision, the [court allowed the defendant to meet briefly with his mother so that he could explain his decision to her, after which the] following canvass occurred on the record.

" 'The Court: . . . I would ask both counsel to pay particular[ly] close attention to my questions. If I miss any, please let me know, so that we can complete the canvass. . . . [O]n the issue of waiving your constitutional right to a jury trial . . . the United States constitution and our state constitution both mandate that you have a constitutional right to be tried by a jury of your peers. Do you understand that, [sir]?

" 'The Defendant: Yes, Your Honor.

" 'The Court: And after speaking with you and, equally as important, speaking with [Attorney] Klein, you have elected to waive that right to a jury trial and you've elected to have [what is] called a courtside trial, meaning that, likely me or someone like me, another Superior Court judge, would be the finder of fact in the trial and

also would be the sentencing judge if you were found guilty. . . . Is that your understanding, [sir]?

" 'The Defendant: Yes, I understand . . . .

* * *

" 'The Court: [Sir], are you on any drugs or medication that would affect your ability to understand what I'm saying right now?

" 'The Defendant: No, Your Honor.

" 'The Court: And have you had time to consult with [Attorney] Klein about your election to waive your constitutional right to a trial by jury and [to] elect a court-side trial? . . .

" 'The Defendant: Yes, Your Honor.

" 'The Court: And I believe [Attorney] Klein . . . said that he would encourage you to waive your right to a jury trial and elect a trial by the court. And do you agree with him on that suggestion, [sir]?

" 'The Defendant: Yes, Your Honor.

" 'The Court: And are you aware . . . [that], as you stand there today, you are cloaked with the presumption of innocence, and I look at you as a person who is presumed innocent?

" 'The Defendant: Yes, Your Honor.

* * *

" 'The Court: Do you understand, [sir], that you have been charged with those charges that I've just recited for you here today on the record? . . .

" 'The Defendant: Yes, Your Honor, I understand.

* * *

" 'The Court: Is there any other question that either counselor would feel comfortable if I ask?

* * *

" '[Attorney] Klein: . . . I would suggest . . . [that] the court [tell] him that this is a final decision as to these matters, and he can't change his mind [and come in on the 17th and say I prefer a jury. And I think if I can share . . . a little bit of what he said to his mother before the canvass about the trust that he has with not this court necessarily or exclusively, but with the judge in general as opposed to—

" 'The Court: Right. Judge versus a jury of six or eight.[5] Right.

" 'Attorney Klein: Or his people on the street, as he put it. I think his intention is to make this permanent and ask for the court trial.]

" 'The Court: All right. And [the defendant is] nodding his head in agreement with [defense counsel]. I do take that as his—

" 'The Defendant: Yes, Your Honor.

" 'The Court: —his affirmation to the court that he won't change his mind and it will be a courtside trial.

* * *

" '[Attorney] Klein: Thank you, Your Honor.

" 'The Court: Thank you, [sir].

" 'The Defendant: No, thank you, Your Honor. I appreciate that. God bless.' "[6] (Footnote added.) Id., 483–85.

Following a seven day trial to the court, the trial court found the defendant guilty on nine of the sixteen counts[7] contained in the operative informations and sentenced him to a total effective term of twenty-two years of imprisonment followed by ten years of special parole and five years of probation. The defendant appealed to the Appellate Court, claiming, inter alia, that the trial court improperly found that his jury trial waiver was knowing, intelligent and voluntary.[8] Id., 478. Although he did not challenge the trial court's multiple findings regarding his competency to stand trial, the defendant nonetheless argued that "the trial court's canvass was constitutionally inadequate because he was suffering from an unspecified mental illness at the time he waived his right to a jury trial, and, therefore, his waiver could not be knowing, intelligent, and voluntary." Id., 488. The defendant further argued that his waiver was invalid "because, despite stating that he was not ready to make such a decision, the choice was 'imposed on [him] by the combined pressure of the court, the prosecutor, and [defense counsel].' " Id., 480–81. According to the defendant, prior to accepting his waiver, "the court should have informed [him] of, among other things, the number of jurors that comprise a jury panel and that a jury's verdict must be unanimous." Id., 481. Finally, the defendant asserted that the canvass improperly "failed to elicit information regarding 'the defendant's background, experience, conduct, and . . . mental and emotional state.' Specifically, the defendant argue[d] that, because he was reared in a country with a civil legal system, and because he does not possess a high school diploma, the court's failure to provide a more thorough canvass constitute[d] reversible error." Id., 489. The Appellate Court disagreed with each of these contentions. See id., 490.

Before addressing the merits, the Appellate Court set forth the legal standards governing the defendant's claims. Specifically, the court explained that the waiver of a fundamental right such as the right to a jury trial must be knowing, intelligent and voluntary and that, in determining whether such a waiver has occurred, a reviewing court must inquire into the totality of the circumstances surrounding it, "including the background, experience, and conduct of the accused."

(Internal quotation marks omitted.) Id., 486, quoting *State* v. *Gore*, 288 Conn. 770, 777, 955 A.2d 1 (2008). The Appellate Court further explained that, "[i]n *Gore*, [this court] concluded that [although] the right to a jury trial must be personally and affirmatively waived by the defendant in order to render such waiver valid . . . [the] canvass need not be overly detailed or extensive . . . . [Rather] it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understands that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." (Internal quotation marks omitted.) *State* v. *Kerlyn T.*, supra, 191 Conn. App. 487. Finally, the Appellate Court emphasized that this court has held on numerous occasions that, "even when a defendant has a history of mental illness and/ or incompetency, if he presently is competent, the trial judge need not engage in a more searching canvass than typically is required before accepting the defendant's waiver of his right to a jury." (Internal quotation marks omitted.) Id., quoting *State* v. *Rizzo*, 303 Conn. 71, 110, 31 A.3d 1094 (2011), cert. denied, 568 U.S. 836, 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012). "In such a case," the court explained, as in all cases, "we look to the totality of the circumstances analysis to determine whether the defendant's personal waiver of a jury trial was made knowingly, intelligently and voluntarily." (Internal quotation marks omitted.) *State* v. *Kerlyn T.*, supra, 487, quoting *State* v. *Gore*, supra, 782 n.12.

Applying these principles to the present case, the Appellate Court rejected the defendant's contention that his waiver was constitutionally infirm because he was suffering from an unspecified mental illness at the time of the waiver. *State* v. *Kerlyn T.*, supra, 191 Conn. App. 488. The Appellate Court explained that, prior to the waiver, the trial court twice had found the defendant competent to stand trial—findings that the defendant did not challenge on appeal—and that, under well established precedent, "any criminal defendant who has been found competent to stand trial, ipso facto, is competent to waive the right to [a jury trial] as a matter of federal constitutional law." (Internal quotation marks omitted.) Id., quoting *State* v. *Ouellette*, 271 Conn. 740, 753, 859 A.2d 907 (2004). The Appellate Court further noted that, under our case law, the fact that the defendant was represented by counsel at the time of the waiver and stated on the record that he (1) had sufficient time to discuss the matter with his attorney, and (2) was satisfied with his attorney's advice, supported a finding that the waiver was constitutionally valid. *State* v. *Kerlyn T.*, supra, 488–89. The court also observed that, when asked during the canvass whether he understood the right that he was giving up, "the defendant's responses were delivered in a clear and unequivocal, 'yes, Your

Honor,' 'no, Your Honor,' " thereby reflecting the defendant's " 'strong desire to proceed to trial before the court, not a jury'. . . ." Id., 489, quoting *State* v. *Scott*, 158 Conn. App. 809, 818, 121 A.3d 742, cert. denied, 319 Conn. 946, 125 A.3d 527 (2015).

The Appellate Court also rejected the defendant's assertion that the trial court's canvass was constitutionally infirm because it failed (1) to elicit from him additional information about his background, experience, conduct, and mental and emotional state, and (2) to explain, among other things, the mechanics of a jury trial, including the number of persons that comprise a jury and that the jury's verdict must be unanimous. *State* v. *Kerlyn T.*, supra, 191 Conn. App. 489–90. In rejecting this assertion, the Appellate Court observed, inter alia, that the defendant, who was thirty-two years old at the time of the waiver, had spent most of his life in the United States and, according to the record, had extensive experience with our criminal justice system. Id., 490. The Appellate Court concluded, therefore, that the defendant's background, experience and conduct all supported a finding that his waiver was knowing, intelligent and voluntary. See id. With respect to the defendant's assertion that the canvass should have included more particularized information about the right to a jury trial, the Appellate Court stated: "[T]he court's failure to include in its canvass [certain information, such as] the number of jurors to which the defendant would be entitled and the requirement that the jury's verdict be unanimous does not compel the conclusion that the defendant's waiver was constitutionally deficient. Our courts [repeatedly] have declined to require [such] a formulaic canvass and have rejected claims that an otherwise valid waiver of the right to a jury is undermined by the trial court's failure to include a specific item of information in its canvass."[9] (Internal quotation marks omitted.) Id. Accordingly, the Appellate Court affirmed the judgments of the trial court. Id., 494. This certified appeal followed.

On appeal, the defendant renews his claim in the Appellate Court that the trial court incorrectly determined that his jury trial waiver was knowing, intelligent and voluntary. As he did in the Appellate Court, the defendant argues that the trial court should have recognized "that the defendant felt himself unready and incapable of making such an important decision on February 9, 2016, that his counsel agreed he was incapable of making such an important decision . . . and that the defendant was in fact completely incapable of making such an important decision," as evidenced by his attorney's request for a competency hearing and the defendant's persistent "rambling about inconsequential" and "unrelated" matters during the hearing. After examining the record and briefs on appeal, including the briefs filed in the Appellate Court, we conclude that the judgment of the Appellate Court should be affirmed.

The Appellate Court's thorough and well reasoned opinion fully addresses the defendant's arguments before this court, and, accordingly, there is no need for us to repeat the discussion contained therein. We therefore adopt the Appellate Court's opinion as the proper statement of the issues and the applicable law concerning those issues.[10] See, e.g., *State* v. *Henderson*, 330 Conn. 793, 799, 201 A.3d 389 (2019).

The judgment of the Appellate Court is affirmed.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

** November 9, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] "The defendant is the biological father of the minor child." *State* v. *Kerlyn T.*, supra, 191 Conn. App. 479 n.2.

[2] General Statutes § 54-56d (a) provides in relevant part: "[A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or *to assist in his or her own defense.*" (Emphasis added.)

[3] "The following colloquy took place between defense counsel, Attorney Johnson, and the court during the defendant's second competency hearing on May 7, 2015.

" 'The Court: [I have] . . . a report dated April 27, 2015, from the Department of Mental Health and Addiction Services. That report [is] very comprehensive, and it does conclude that [the defendant], who is present in court today . . . has been restored to competency and does demonstrate a sufficient understanding of the proceedings and can ably assist in his own defense. [Attorney] Johnson?

" '[Attorney] Johnson: Yes, Your Honor . . . as I said, [we would stipulate to the findings contained in that exhibit and request] that he be released back to [the Department of Correction] at this time.' " *State* v. *Kerlyn T.*, supra, 191 Conn. App. 482 n.7.

[4] "Attorney Johnson represented the defendant during the preliminary stages of his criminal proceedings relating to the May, 2014 home invasion, in addition to [representing him in] a number of other matters that arose prior to that arrest. Attorney Johnson was later replaced by privately retained counsel, Attorney Klein, in June, 2015. Thereafter, Attorney Klein represented the defendant during all relevant proceedings." *State* v. *Kerlyn T.*, supra, 191 Conn. App. 482 n.8.

[5] We note that, in referencing the number eight, the trial court was probably alluding to the fact that, in addition to six regular jurors, it was likely that two alternate jurors would be selected.

[6] During the two weeks between the time of the defendant's jury trial waiver and the start of trial, the defendant never sought to change his election back to a jury trial. Following his convictions, the defendant also did not file a motion to vacate the judgment pursuant to General Statutes § 54-82b (b) on the ground that his jury trial waiver was not knowing, intelligent and voluntary. We note, moreover, that, on the second day of trial, the trial court, *Eschuk, J.*, granted defense counsel's request for another competency evaluation. The defendant was subsequently examined by a team from the Office of Forensic Evaluations, which concluded for a second time that the defendant was competent to stand trial.

[7] "During trial, the defendant moved for a judgment of acquittal, and the court dismissed one count of criminal attempt to commit assault in the first degree. After the close of evidence, the court found the defendant not guilty of strangulation in the second degree, criminal violation of a protective order, kidnapping in the first degree with a firearm, one count of threatening in the first degree, and criminal possession of a firearm. The court also dismissed one count of intimidating a witness for improper pleading." *State* v. *Kerlyn T.*, supra, 191 Conn. App. 480 n.4.

[8] Although the defendant failed to preserve his claim in the trial court, the Appellate Court reviewed it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773,

781, 120 A.3d 1188 (2015), because the record was adequate for review and the claim is of constitutional magnitude. See *State* v. *Kerlyn T.*, supra, 191 Conn. App. 485–86. The court concluded, however, that the defendant had failed to establish that a constitutional violation exists and deprived him of a fair trial. Id., 490.

[9] The Appellate Court also declined the defendant's request that it "use its supervisory authority to establish a more uniform procedure for conducting a canvass on the waiver of the right to a jury trial," stating that "traditional protections are adequate to safeguard the rights of a defendant who waives his right to a jury trial and to safeguard the integrity of the judicial system . . . ." *State* v. *Kerlyn T.*, supra, 191 Conn. App. 486 n.11.

[10] Like the Appellate Court, we decline the defendant's invitation to exercise our supervisory authority to "mandate a more particularized canvass" requiring our trial courts to inform a defendant, prior to accepting a waiver of his right to a jury trial, of a litany of facts delineating the differences between a bench trial and a jury trial. We continue to believe that competent counsel is capable of explaining those basic differences—that a jury of six or twelve, with alternates, comprised of a defendant's peers, selected with the defendant's participation, would have to be unanimous—sufficiently to enable a defendant to make an informed decision when selecting one over the other. See, e.g., *State* v. *Rizzo*, supra, 303 Conn. 104 n.26 ("[w]hen a defendant indicates that he has been advised by counsel and is satisfied with the advice received, the trial court is entitled to rely on that representation in determining whether a jury waiver is knowing and intelligent"); *State* v. *Woods*, 297 Conn. 569, 586, 4 A.3d 236 (2010) ("[t]he fact that the defendant was represented by counsel and that he conferred with counsel concerning waiver of his right to a jury trial supports a conclusion that his waiver was constitutionally sound"). Although not constitutionally required, we also recommend that our trial courts elicit from a defendant proper assurances that he or she, in fact, understands those differences. Of course, if circumstances not existing in the present case indicate a need for a more particularized judicial explanation of the right being waived, such as a statement by the defendant that counsel has not provided a clear explanation, we recommend that our trial courts adjust the canvass accordingly.

---